GLANCY PRONGAY & MURRAY LLP
Lionel Z. Glancy (134180)
Robert V. Prongay (270796)
Lesley F. Portnoy (304851)
Charles H. Linehan (307439)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150

*Attorneys for Lead Plaintiffs*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR KAYE IRA FCC AS CUSTODIAN DTD 6-8-00 and HAYDEN LEASON, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>IMMUNOCELLULAR THERAPEUTICS, LTD., DAVID FRACTOR,  MANISH SINGH, LAVOS, LLC, LIDINGO HOLDINGS, LLC, KAMILLA BJORLIN, ANDREW HODGE, and BRIAN NICHOLS,<br><br>　　　　Defendants. | Case No. 2:17-cv-03250-FMO (SK)<br><br>CLASS ACTION<br><br>**NOTICE OF LEAD PLAINTIFFS' UNOPPOSED MOTION FOR AN ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND DIRECTING DISSEMINATION OF NOTICE TO THE CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date: October 11, 2018**<br>**Time: 10:00 a.m.**<br>**Room: 6th Floor – Crtm 6D**<br>**Judge: Hon. Fernando M. Olguin** |

## NOTICE OF UNOPPOSED MOTION

PLEASE TAKE NOTICE that Lead Plaintiffs Arthur Kaye IRA FCC as Custodian DTD 6-8-00 ("Kaye") and Hayden Leason ("Leason;" together with Kaye, "Plaintiffs") (on behalf of themselves and all Settlement Class Members), by and through counsel of record in the Litigation, hereby move this Court pursuant to Federal Rule of Civil Procedure 23(e) for an order: (1) granting preliminary approval of the Stipulation of Settlement ("Stipulation"); (2) granting preliminary certification of a settlement class; and (3) directing dissemination of notice to the Settlement Class.  The Motion is set for hearing on October 11, 2018, at 10:00 a.m., before the Honorable Fernando M. Olguin, United States District Court, Central District of California, 350 W. 1st Street, Courtroom #6D, 6th Floor, Los Angeles, California 90012.

The Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities in Support thereof; the Stipulation and the exhibits filed therewith; all other pleadings and papers filed in this action; and such other matters as may be presented to the Court before or at the time of the hearing. In accordance with Local Rule 7-3, Defendants have reviewed this Notice of Motion, Motion, and the accompanying Memorandum of Points and Authorities in Support thereof and have indicated that they do not oppose this Motion.

# MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................... v

I.  SUMMARY OF LITIGATION AND SETTLEMENT NEGOTIATIONS ................................ 1

    A.   Procedural History and Co-Lead Counsel's Investigation......................... 1

    B.   Settlement Negotiations ........................................................................... 4

II.  THE PROPOSED TERMS OF SETTLEMENT .................................................................... 5

    A.   Settlement Class Definition....................................................................... 5

    B.   Monetary Consideration and Plan of Allocation..................................... 5

    C.   Release Provisions.................................................................................... 5

    D.   Attorneys' Fees and Reimbursement of Expenses.................................... 7

III.  PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE .......... 8

    A.   The Settlement Approval Process ............................................................ 8

    B.   The Proposed Settlement Meets the Requirements for Preliminary
        Approval ................................................................................................... 8

        1.   The Extent of Discovery Completed, the Stage of the Proceedings,
             and Strengths of Plaintiffs' Case ...................................................... 9

        2.   The Proposed Settlement Resulted From Arm's-Length
             Negotiations and Did Not Involve Any Collusion ......................... 10

        3.   The Proposed Settlement Falls Well Within the Range of
             Reasonableness ............................................................................... 11

IV.  CERTIFICATION OF THE SETTLEMENT CLASS UNDER RULE 23 IS APPROPRIATE ... 15

    A.   The Settlement Class Members are so Numerous that Joinder is
        Impracticable ......................................................................................... 15

    B.   Common Questions of Law or Fact Exist ............................................. 15

    C.   Plaintiffs' Claims are Typical of Those of the Settlement Class.............. 16

    D.   Plaintiffs are Adequate Representatives of the Settlement Class ........... 17

    E.   The Requirements of Rule 23(b)(3) are Satisfied ................................... 17

1.      Common Legal and Factual Questions Predominate...................... 17

2.      A Class Action is the Superior Means to Adjudicate Plaintiffs' and

        Settlement Class Members' Claims ............................................... 18

V.    THE PROPOSED FORM AND METHOD OF CLASS NOTICE ARE CONSTITUTIONALLY

      SOUND AND APPROPRIATE ..................................................................... 18

VI.   THE PROPOSED AWARDS TO CLASS REPRESENTATIVES FOR COSTS AND EXPENSES,

      INCLUDING LOST WAGES, ARE FAIR AND REASONABLE ........................... 22

VII.  PROPOSED SCHEDULE ........................................................................... 25

VIII. CONCLUSION........................................................................................ 25

# TABLE OF AUTHORITIES

## Cases

*Alberto v. GMRI, Inc.*,
   No. Civ. 07-1895 WBS DAD, 2008 WL 4891201 (E.D. Cal. Nov. 12,
   2008) ........................................................................................................... 11

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................ 17, 18

*Barbosa v. Cargill Meat Solutions Corp.*,
   297 F.R.D. 431 (E.D. Cal. 2013) ................................................................. 11

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015) ................................................................. 24

*Bellows v. NCO Fin. Sys., Inc.*,
   No. 3:07-CV-01413-W-AJB, 2008 WL 5458986 (S.D. Cal. Dec. 10,
   2008) ........................................................................................................... 11

*Browning v. Yahoo! Inc.*,
   No. C04-01463 HRL, 2006 WL 3826714 (N.D. Cal. Dec. 27, 2006) ........... 8

*Cal. Pub. Emps. Ret. Sys. v. ANZ Sec., Inc.*,
   137 S. Ct. 2042 (2017) .................................................................................. 7

*Churchill Village, L.L.C. v. GE*,
   361 F.3d 566 (9th Cir. 2004) ....................................................................... 19

*Des Roches v. Cal. Physicians' Serv.*,
   320 F.R.D. 486 (N.D. Cal. 2017) ................................................................. 15

*Destefano v. Zynga, Inc.*,
   No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .......... 14

*Eisen v. Carlisle & Jacqueline*,
   417 U.S. 156 (1974) ..................................................................................... 20

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804 (2011 ...................................................................................... 17

*Estakhrian v. Obenstine*,
   320 F.R.D. 63 (C.D. Cal. 2017) ................................................................... 16

*Estrella v. Freedom Fin'l Network,*
 No. C 09-03156 SI, 2010 WL 2231790 (N.D. Cal. June 2, 2010) ............................ 15

*Flynn v. Sienta, Inc.,*
 No. 2:15cv7548, Dkt. 124 (C.D. Cal. May 22, 2017) ................................ 24

*Fraser v. Asus Computer Intern.,*
 No. C 12-00652 WHA, 2012 WL 6680142 (N.D. Cal. Dec. 21, 2012) .................... 7

*Garcia v. Ceva Logistics, U.S.A.,*
 No. EDCV 16-388 JGB (DTBx), 2017 U.S. Dist. LEXIS 177946 (C.D.
 Cal. Oct. 23, 2017) ............................................................................ 21

*Gautreaux v. Pierce,*
 690 F.2d 616 (7th Cir. 1982) .................................................................. 11

*Gudimetla v. Ambow Educ. Holding,*
 No. 12-5062 PSG (AJWx), 2015 WL 12752443 (C.D. Cal. Mar. 16,
 2015) ................................................................................................ 23

*Hanlon v. Chrysler Corp.,*
 150 F.3d 1011 (9th Cir. 1998) .................................................... 16, 17, 18

*In re Am. Apparel, Inc. S'holder Litig.,*
 2014 WL 10212865 (C. D. Cal. Jul. 28, 2014) ........................................ 24

*In re Am. Apparel, Inc. S'holder Litig.,*
 No. 10-06352 MMM (JCGx), 2014 WL 10212865 (C.D. Cal. July 28,
 2014) .............................................................................................. 7

*In re Biolase, Inc. Sec. Litig.,*
 No. SACV 13-1300-JLS (FFMx), 2015 WL 12720318 (C.D. Cal. Oct.
 13, 2015) ........................................................................................ 14

*In re Cement and Concrete Antitrust Litig.,*
 817 F.2d 1435 (9th Cir. 1987), *rev'd on other grounds,* 490 U.S. 93
 (1989) ............................................................................................ 21

*In re Galena Biopharma, Inc. Sec. Litig.,*
 No. 3:14-cv-00367-SI, 2016 WL 3457165 (D. Or. June 24, 2016) .................... 24

*In re Mego Fin. Corp. Sec. Litig.,*
 213 F.3d 454 (9th Cir. 2000) ................................................................ 24

*In re Omnivision Techs. Inc.,*
 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................ 7, 8

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ............................................................................. 23

*In re Pacific Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ............................................................................... 11

*In re Zynga Inc. Secs. Litig.*,
   No. 12-cv-04007-JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ...................... 14

*Jonsson v. USCB, Inc.*,
   No. CV 13-8166 FMO (SHx), 2015 U.S. Dist. LEXIS 69934 (C.D. Cal.
   May 28, 2015) ................................................................................................... 21

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ........................................................................... 8, 9

*Louie v. Kaiser Found. Health Plan, Inc.*,
   No. 08cv0795, 2008 WL 4473183 (S.D. Cal. Oct. 6, 2008) ................................ 10

*Lozano v. AT&T Wireless Serv., Inc.*,
   504 F.3d 718 (9th Cir. 2007) ............................................................................. 16

*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ......................................................................... 9

*Paggos v. Resonant, Inc.*,
   Slip Op., No. 15-01970 SJO (VBKx), 2017 WL 3084162 (C.D. Cal.
   May 15, 2017) ....................................................................................... 7, 18, 24

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) ............................................................................... 7

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) ........................................................................... 16

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ............................................................................. 23

*Schaffer v. Litton Loan Servicing, LP*,
   No. 05-07673-MMM, 2012 WL 10274679 (C.D. Cal. Nov. 13, 2012) .................. 24

*Spann v. J.C. Penney Corp.*,
   314 F.R.D. 312 (C.D. Cal. 2016) ....................................................................... 21

*Staton v. Boeing Co.*,
   327 F.3d 938, (9th Cir. 2003) ........................................................................... 23

*Vasquez v. Coast Valley Roofing, Inc.,*
    670 F. Supp. 2d 1114 (E.D. Cal. 2009) ........................................................ 15

*West v. Circle K Stores, Inc.,*
    No. CIV. S-04-0438 WBS GGH, 2006 WL1652598 (E.D. Cal. June 13,
    2006) ............................................................................................................ 11

## **Statutes**

15 U.S.C. §78u-4(a)(4) ................................................................................... 22

## **Other Authorities**

*Manual for Complex Litigation*, Third, §23.14 (West ed. 1995) ..................... 19

Securities Exchange Act of 1934 ................................................................. 2, 6

## **Rules**

Fed. R. Civ. P. 23 ............................................................................................ 21

Fed. R. Civ. P. 23(a)(1) .................................................................................. 15

Fed. R. Civ. P. 23(a)(2) .................................................................................. 15

Fed. R. Civ. P. 23(a)(3) .................................................................................. 17

Fed. R. Civ. P. 23(a)(4) .................................................................................. 17

Fed. R. Civ. P. 23(b)(3) .................................................................................. 17

Fed. R. Civ. P. 23(c)(2) .................................................................................. 20

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................. 19

Fed. R. Civ. P. 23(e) ......................................................................................... 8

Plaintiffs, on behalf of themselves and all Settlement Class Members, respectfully submit this memorandum in support of their unopposed motion for an order preliminarily approving the proposed Settlement of this Action embodied in the Stipulation.[1]   The proposed Settlement was reached after the Parties engaged in arm's length settlement negotiations.  Based on a thorough understanding of the facts and the law, the Parties agreed to the proposed Settlement of $1,150,000 in cash.  If approved, it will fully resolve this Action on behalf of a class of persons who purchased IMUC common stock on the open market between May 1, 2012 and May 30, 2014, inclusive ("Settlement Class").

In determining whether preliminary approval is warranted, the sole issue before the Court is whether the proposed Settlement is within the range of what is fair, reasonable and adequate so that notice of the proposed Settlement can be given to the Settlement Class and a hearing can be scheduled to consider final settlement approval.  The Settlement clearly meets these criteria.  As discussed below, while Plaintiffs believe their claims are meritorious, significant legal and factual issues exist with respect to liability and damages.  The $1,150,000 cash fund that will be created under the Stipulation represents a beneficial resolution of the Action, and the Settlement is in the best interests of the Settlement Class.

Because all requirements for preliminary approval are met, Plaintiffs respectfully request that the Court (a) preliminarily certify the Settlement Class for settlement purposes only, (b) preliminarily approve the Plan of Allocation as fair, reasonable and adequate, and (c) schedule a Final Approval Hearing to determine whether the proposed Settlement, Plan of Allocation, and Co-Lead Counsel's request for attorneys' fees and reimbursement of expenses should be finally approved as fair, reasonable and adequate.

## I.   SUMMARY OF LITIGATION AND SETTLEMENT NEGOTIATIONS

### A.   Procedural History and Co-Lead Counsel's Investigation

On May 1, 2017, Plaintiff Kaye filed a putative class action complaint against

---

[1] Unless otherwise stated, capitalized terms have the same meaning as in the Stipulation.

Defendants IMUC, David Fractor, John S. Yu, Andrew Gengos, Manish Singh, Lavos, LLC, Lidingo Holdings, LLC, Kamilla Bjorlin, Andrew Hodge, Brian Nichols, and Vincent Cassano (the "Initial Defendants"), alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder. (ECF No. 1.) The initial complaint and each of the subsequent complaints contended that the Initial Defendants made misrepresentations throughout the Class Period in SEC filings and paid-for "articles" that artificially inflated IMUC's share price by misrepresenting the purported success of IMUC's ICT-107 trials and failing to disclose that IMUC paid for these promotional "articles." Plaintiffs contend that Defendants engaged in this conduct to artificially inflate IMUC's value.

On July 21, 2017, the Court appointed Plaintiffs Kaye and Leason as co-lead plaintiffs for the proposed class. (ECF No. 35.) On August 24, 2017, Plaintiffs filed a consolidated first amended complaint ("FAC"), alleging violations of Sections 10(b) and 20(a) and Rule 10b-5. (ECF No. 43.) Thereafter, the Parties met and conferred concerning deficiencies alleged by Defendants to exist in the FAC. After discussions, the Parties agreed to a process whereby Plaintiffs would amend the FAC to attempt to resolve Defendants' perceived deficiencies.

On October 13, 2017, Plaintiffs filed their Second Amended Complaint ("SAC"), adding Christopher French and Stephen Ramey as defendants (collectively, with the Initial Defendants, "Defendants"), and alleging violations of Sections 10(b) and 20(a) of the Exchange Act. (ECF No. 53). Prior to filing the SAC, Co-Lead Counsel conducted an extensive investigation and analysis of the factual and legal issues involved in this Litigation, which included: (a) review and analysis of relevant filings made by IMUC with the SEC; (b) review and analysis of Defendants' other public documents, conference calls and press releases; and (c) review and analysis of securities analysts' reports and advisories concerning the Company. Co-Lead Counsel also retained an investigative firm to interview former IMUC employees and other persons

with knowledge of material facts.  The SAC asserted claims on behalf of all persons who purchased or otherwise acquired IMUC common stock on the open market between May 1, 2012 and May 30, 2014, inclusive (the "Settlement Class Period"), and alleged that Defendants violated Sections 10(b) and 20(a) and SEC Rules 10b-5(a)-(c).

After filing of the SAC, the Parties met and conferred concerning purported deficiencies that Defendants identified in the SAC.  At the conclusion of the conference, Plaintiffs disagreed with Defendants' assertions.  On November 10, 2017, all of the Initial Defendants, save Nichols and Cassano, filed a motion to dismiss the SAC.  (ECF No. 58.)  Plaintiffs opposed that motion (ECF No. 68), and the motion was fully briefed as of December 21, 2017 (ECF No. 75.) The Court took the motion under submission, without oral argument, on January 16, 2018. (ECF No. 84.)

Also after filing the SAC, Plaintiffs reached agreement in principle with three Defendants – Ramey, French and Cassano – for those Defendants to provide Plaintiffs with documents concerning their participation in the alleged stock promotion scheme and to submit to interviews, in exchange for a release of claims in this Litigation.  Before entering into those agreements, Plaintiffs first confirmed through investigation and document review that these Defendants lacked financial resources to meaningfully participate in a settlement or to satisfy a judgment.  These Defendants subsequently produced documents and submitted to interviews.

On May 29, 2018, the Court entered an order dismissing the SAC with leave to amend and instructing Plaintiffs to file a Consolidated Third Amended Complaint ("TAC") by June 15, 2018 (the "MTD Order").  (ECF No. 98.)  The MTD Order expressed skepticism with Plaintiffs' claims:

> In preparing the [TAC], plaintiffs shall carefully evaluate the contentions set forth in defendants' Motion. For example, the court is skeptical that the [SAC] adequately pleads loss causation and scienter, particularly as to the individual defendants other than Singh, Bjorlin, and Hodge.

Following the Court's MTD Order, at the same time that Plaintiffs were preparing to

file the TAC, the Parties commenced settlement negotiations to resolve this Action.  On June 13, 2018, the Parties submitted a joint stipulation requesting an extension of the deadline for Plaintiffs to file the TAC and a new briefing schedule for any motion to dismiss.  (ECF No. 100.)  On June 14, 2018, the Court so-ordered the stipulation, extending the time for Plaintiffs to file their TAC until June 29, 2018.  (ECF No. 101.)

On June 27, 2018, the Parties submitted another joint stipulation requesting an extension of the deadline for Plaintiffs to file the TAC and a new briefing schedule for any motion to dismiss.  (ECF No. 104.) Absent an order of the Court approving the Parties' June 27, 2018 stipulation, Plaintiffs filed their TAC on June 29, 2018, removing Yu, Gengos, Cassano, French, and Ramey as defendants, and making other extensive amendments to the complaint.  (ECF No. 105.)  The TAC retained the same Class Period and class definition and repeated Plaintiffs' core allegations of a stock promotion scheme.  On July 11, 2018, Plaintiffs filed a Notice of Dismissal, without prejudice, of claims against Yu and Gengos.  (ECF No. 107.)

**B.**   **Settlement Negotiations**

The Parties continued thereafter to engage in settlement discussions.   On or around July 17, 2018, the Parties agreed upon a settlement in principle.  The following day, they promptly notified the Court of their tentative agreement and requested the Court to stay all pending deadlines to allow them time to negotiate and submit a written settlement agreement and motion for preliminary approval of a class action settlement. On July 25, 2018, the Court granted the request and vacated all deadlines pending finalization and submission of the settlement documents to the Court.  (ECF No. 109.)

After reaching an agreement in principle regarding the relief to the Settlement Class, the Parties began preparing the settlement documents, including the Stipulation, the class Notice, the Summary and Postcard Notices, the Proof of Claim and Release Form, the exclusion form, and the proposed orders granting preliminary and final approval and entering final judgment.   Over the next several weeks, the Parties

exchanged drafts of the Settlement documents.  The parties finalized and executed the Stipulation on September 13, 2018.

## II.   THE PROPOSED TERMS OF SETTLEMENT

### A.   Settlement Class Definition

The Settlement Class includes all persons who purchased IMUC common stock on the open market between May 1, 2012 and May 30, 2014, inclusive.[2]

### B.   Monetary Consideration and Plan of Allocation

Under the terms of the proposed Settlement, IMUC or its insurers will make a cash payment of one million one-hundred fifty thousand dollars ($1,150,000) for the benefit of the Settlement Class on behalf of all Released Persons, as set forth in greater detail in ¶¶2.1–2.10 of the Stipulation.  The $1.15 million in cash will be deposited into the Settlement Fund (as defined in ¶1.36 of the Stipulation) no later than twenty-one (21) days after both of the following have taken place: (a) the Court has entered the Preliminary Approval Order granting preliminary approval of the Settlement; and (b) IMUC's counsel have received from Co-Lead Counsel a Form W-9 providing the tax identification number for the escrow account.  (*See* Stipulation ¶2.1.)  Any interest earned will be for the benefit of the Settlement Class.  (*Id.* ¶1.36.)

Co-Lead Counsel have considered the issues of liability and damages in determining an appropriate proposed Plan of Allocation.  Co-Lead Counsel did not favor or consider the particular trading history of Plaintiffs or of any other individual Settlement Class Members in crafting this plan.  A copy of the Plan of Allocation is set forth in the Notice of Proposed Class Action Settlement (Stipulation, Ex. A-2, at 5-10).

### C.   Release Provisions

Upon the Effective Date, as defined in ¶1.6 of the Stipulation, Plaintiffs and all

---

[2] Excluded from the Settlement Class are Defendants; members of the Defendants' immediate families; officers, directors, and subsidiaries of IMUC; any firm, entity, or corporation wholly owned by any Defendant and/or any member(s) of a Defendant's immediate family; any trust of which a Defendant is the settlor or which is for his benefit and/or that of any member of his immediate family (as defined by SEC regulations); and the legal representatives, heirs, or successors-in-interest of the Settling Defendants.  Also excluded from the Settlement Class are those Persons who timely and validly request exclusion from the Settlement Class in accordance with the instructions in the Notice.

other Settlement Class Members, each of their respective Related Persons, and all other Persons who have or claim the right, ability, standing, or capacity to assert, prosecute, or maintain on behalf of any Settlement Class Member any of the Released Claims (or to obtain the proceeds of any recovery therefrom) shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, discharged, and dismissed all Released Claims (including Unknown Claims) against the Released Persons, whether or not such Settlement Class Member executes and delivers a Proof of Claim and Release form, seeks or obtains a distribution from the Net Settlement Fund, is entitled to receive a distribution under the Plan of Allocation approved by the Court, or has objected to any aspect of the Stipulation or the Settlement. (Stipulation ¶6.2.)[3]  Expressly excluded from Released Claims are: (i) the matters set forth in ¶6.5 of the Stipulation (with respect to Defendants' claims against insurers); and (ii) the shareholder derivative claims asserted in the pending action *Wiener et al. v. Fractor et al.*, (Cal. Super. Ct., Los Angeles Cnty.). (*Id*.¶1.30.).

The release is fairly targeted to the subject matter of Litigation, covering only claims that could have been alleged arising out of purchases of IMUC common stock during the Settlement Class Period. Further, the Settlement Class Period starts in 2012, more than six years ago, and the Supreme Court recently ruled that the Exchange Act's

---

[3] Released Claims shall mean "any and all claims (including Unknown Claims as defined in ¶1.44 [of the Stipulation]), duties, debts, demands, rights, disputes, suits, matters, damages, losses, obligations, proceedings, issues, judgments, liabilities, and causes of action of every nature and description whatsoever (including, but not limited to, any claims for damages, whether compensatory, consequential, special, punitive, exemplary or otherwise; restitution; rescission; interest; attorneys' fees; expert or consulting fees; and any other costs, expenses, charges, or liability whatsoever), whether based on federal, state, local, statutory, common, administrative, or foreign law or any other law, rule or regulation, or at equity, whether known or unknown, discoverable or undiscoverable, concealed or hidden, suspected or unsuspected, liquidated or unliquidated, fixed or contingent, choate or inchoate, accrued or unaccrued, matured or unmatured, at law or in equity, whether class, derivative, or individual in nature, which now exist or heretofore have existed or have been or could have been asserted in any forum, whether foreign or domestic, by Plaintiffs or any Settlement Class Member, or any Person claiming through or on behalf of any of them, against any of the Released Persons based upon, arising out of, or relating in any way to the claims, allegations, acts, events, facts, matters, transactions, occurrences, statements, representations, misrepresentations or omissions that are, were, or could have been alleged in the Litigation, including, but not limited to, *any claim arising out of any purchase or acquisition of IMUC securities on the open market during the Settlement Class Period*." (Stipulation ¶1.30) (emphasis added).

1    five-year statute of repose cannot be tolled during the pendency of a class action.  *See*
2    *Cal. Pub. Emps. Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042 (2017).  Similar releases
3    have been approved in this District.  *See Paggos v. Resonant, Inc.*, Slip Op., No. 15-
4    01970 SJO (VBKx), 2017 WL 3084162, at *9-10 (C.D. Cal. May 15, 2017) (release of
5    all claims arising out or in connection with the securities litigation except for claims
6    asserted in the federal shareholder derivative action); *In re Am. Apparel, Inc. S'holder*
7    *Litig.*, 2014 WL 10212865, at *4 (C.D. Cal. July 28, 2014) ("The settlement agreement
8    provides that settlement class members will release all claims against defendants that
9    either were or could have been asserted in the complaint because they arose out of the
10   allegations made in the complaint and relate to the purchase or acquisition of the
11   publicly traded common stock of American Apparel during the Class Period.
12   Defendants also agree to release Rendelman and the class from any claims they may
13   have against them."). For these reasons, the release adequately balances fairness to
14   absent Class Members and recovery for Settlement Class Members with Defendants'
15   business interest in ending this litigation with finality.  *See Fraser v. Asus Computer*
16   *Intern.,* 2012 WL 6680142, at *4 (N.D. Cal. Dec. 21, 2012) (recognizing defendant's
17   "legitimate business interest in 'buying peace' and moving on to its next challenge" as
18   well as the need to prioritize "[f]airness to absent class member[s].").

19   **D.    Attorneys' Fees and Reimbursement of Expenses**

20          Co-Lead Counsel will apply to the Court for an award of attorneys' fees in an
21   amount not to exceed 25% of the total Settlement Fund (or approximately $287,500).
22   (Stipulation ¶8.1.)  This amount is in line with the 25% "bench mark" percentage that
23   the Ninth Circuit awards for attorneys' fees.  *Paul, Johnson, Alston & Hunt v. Graulty*,
24   886 F.2d 268, 272 (9th Cir. 1989); *In re Omnivision Techs. Inc.*, 559 F. Supp. 2d 1036,
25   1047-48 (N.D. Cal. 2008) ("The median in class actions is approximately [25%], but
26   awards of [30%] are not uncommon in securities class actions.") (citation omitted).

27          Co-Lead Counsel will also apply to the Court for reimbursement of costs and
28   expenses in an amount not to exceed $80,000, plus interest on such fees and expenses at

1  the same rate as earned by the Settlement Fund.  Separately, Co-Lead Counsel request

2  that each of the Plaintiffs be awarded $2,500 compensation for their time and effort in

3  pursuing claims on behalf of the Class.  Accompanying this Memorandum are

4  declarations signed by both Plaintiffs detailing their participation in the Action.

5     **III.**  **PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE**

6  **A.**  **The Settlement Approval Process**

7        Rule 23(e) requires that before a class action is dismissed or compromised, notice

8  of the proposed dismissal or compromise must be given in the manner directed by the

9  Court and judicial approval must be obtained.  To that end, the Court must find that the

10  proposed settlement is "fundamentally fair, adequate, and reasonable."  *Omnivision*,

11  559 F. Supp. 2d at 1040 (citation omitted).  "[W]hether a settlement is fundamentally

12  fair within the meaning of Rule 23(e) is different from the question whether the

13  settlement is perfect in the estimation of the reviewing court."  *Lane v. Facebook, Inc.*,

14  696 F.3d 811, 819 (9th Cir. 2012).

15        The Ninth Circuit has a policy favoring settlement, "particularly in class action

16  law suits."  *Omnivision*, 559 F. Supp. 2d at 1041.  The Court's inquiry into the

17  settlement agreement is ultimately limited to the extent necessary to make a judgment

18  that "the agreement is not the product of fraud or overreaching by, or collusion

19  between, the negotiating parties."  *Id.*  Thus, the Court "is not to reach the merits of the

20  case or to form conclusions about the underlying questions of law or fact" in

21  determining the fairness, reasonableness and adequacy of a settlement agreement.  *Id.*

22  **B.**  **The Proposed Settlement Meets the Requirements for Preliminary Approval**

23        At the preliminary approval stage, the Court must conduct a "*prima facie* review

24  of the relief and notice" provided by the settlement agreement before the Court orders

25  notice to be sent.  *Browning v. Yahoo! Inc.*, 2006 WL 3826714, at *4 (N.D. Cal. Dec.

26  27, 2006).  The Court must find the release to be "fair and reasonable" and the notice to

27  be "adequate."  *Id.* at *7-8.  Ultimately, in making a final determination of whether the

28  proposed Settlement is fair, adequate, and reasonable, the Court will balance some or all

of the following factors:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Facebook,* 696 F.3d at 819 (citation omitted). "Under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-26 (C.D. Cal. 2004). Consideration of these factors shows that the proposed Settlement now before the Court falls squarely within the range of reasonableness warranting notice of the proposed Settlement to the Settlement Class Members and scheduling a Final Approval Hearing.

### 1. The Extent of Discovery Completed, the Stage of the Proceedings, and Strengths of Plaintiffs' Case

The Parties reached the proposed Settlement after substantial discussions and an arm's-length negotiation discussing the merits of the case. Co-Lead Counsel conducted a thorough investigation into the claims, including a review of Defendants' public documents, conference calls and announcements, SEC filings, wire and press releases published by and regarding IMUC, analysts' reports and advisories about IMUC and information readily obtainable on the Internet. After Plaintiffs' SAC was dismissed by the Court, the Plaintiffs engaged in further discovery and filed the TAC. In considering whether to enter into the Settlement, Plaintiffs, represented by counsel experienced in securities litigation, weighed the risks inherent in establishing all the elements of their claims, including risks of proving materiality, Defendants' scienter, loss causation, and recoverable damages, as well as the expense and likely duration of the Action.

Although Plaintiffs believe their claims had merit, Plaintiffs still had many obstacles to overcome to achieve a successful outcome. Plaintiffs recognized that

Defendants were certain to file a motion to dismiss the TAC and, given that the Court granted the Defendants' motion to dismiss the SAC, Plaintiffs faced a real risk of the case being dismissed.  Even if they prevailed on a motion to dismiss, in order to defeat a summary judgment motion and prevail at trial, they would have to prove, on a Defendant-by-Defendant basis, not only that Defendants were involved in the alleged promotion scheme and that their statements concerning ICT-107 were materially false or misleading, but also that Defendants were obligated to disclose that IMUC paid for those articles, and that their statements concerning ICT-107 were false when made; that the truth about the false and misleading statements was disseminated into the market; and as a result, IMUC's stock price declined, causing recoverable damages for the Class.  For their part, Defendants have denied the material allegations of the TAC and all prior complaints, denied that Plaintiffs' allegations state a cognizable claim, and denied that IMUC stockholders have sustained any damages as a result of any alleged misconduct by Defendants.  Although Plaintiffs believe that the case has merit and that they have evidence to establish Defendants' liability, Plaintiffs recognize that, were they to continue prosecution of this Action, there is a substantial risk that nothing would be recovered if this case were to proceed to trial.

Thus, Co-Lead Counsel conducted a thorough examination regarding the impact of Defendants' alleged conduct on Settlement Class Members and the alleged damages, and were able to act intelligently in negotiating the proposed Settlement.  *See Louie v. Kaiser Found. Health Plan, Inc.*, 2008 WL 4473183, at *6 (S.D. Cal. Oct. 6, 2008) ("extensive investigation, discovery, and research weighs in favor preliminary settlement approval").

### 2. The Proposed Settlement Resulted From Arm's-Length Negotiations and Did Not Involve Any Collusion

There can be no claim of collusion here.  The Settlement is the result of informed, arm's-length and hard-fought negotiations between Co-Lead Counsel and Defendants' counsel.  Moreover, counsel for each Party is experienced and thoroughly

familiar with the factual and legal issues.  Courts recognize that the opinion of experienced and informed counsel supporting a settlement is entitled to considerable weight.  *See Bellows v. NCO Fin. Sys., Inc.*, 2008 WL 5458986, at *8 (S.D. Cal. Dec. 10, 2008) ("[I]t is the considered judgment of experienced counsel that this settlement is a fair, reasonable, and adequate settlement of the litigation, which should be given great weight."); *Alberto v. GMRI, Inc.*, 2008 WL 4891201, at *10 (E.D. Cal. Nov. 12, 2008) ("When approving class action settlements, the court must give considerable weight to class counsel's opinions due to counsel's familiarity with the litigation and its previous experience with class action lawsuits").  "This reliance is predicated on the fact that '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.'" *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013) (quoting *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

### 3.   The Proposed Settlement Falls Well Within the Range of Reasonableness

"[A]t this preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of possible approval.'"  *West v. Circle K Stores, Inc.*, 2006 WL1652598, at *11 (E.D. Cal. June 13, 2006) (quoting *Gautreaux v. Pierce*, 690 F.2d 616 n. 3 (7th Cir. 1982)).  The proposed $1,150,000 Settlement is an excellent result for the Settlement Class given the risks of continued litigation, and falls well within a range of what is considered fair, reasonable, and adequate.  Further, a comparison of the $1.15 million recovery to the potential damages that might be recovered for the Settlement Class at trial, given the risks of the litigation, supports the reasonableness of the Settlement.

Plaintiffs were confident that they would sustain their claims with respect to the facts and illegality of the alleged stock promotion scheme, but were concerned with their ability to prove loss causation.  The SAC alleged four disclosure events that resulted in direct losses to investors.  The first disclosure occurred August 20, 2012,

when IMUC abruptly, and without explanation, announced defendant Manish Singh's resignation. Singh was IMUC's President and CEO, and a director.  In reaction to this news, on August 21, 2012, IMUC's stock price from $2.91 to $2.43 per share, a 16.5% decline; the following day, the price fell an additional 5%, or $0.13 per share.  Second, on March 11, 2013, IMUC disclosed that Singh received no severance payments, indicating, as Plaintiffs allege, that he had been terminated for cause; the next day, IMUC's share price fell approximately 3.5%, from $2.78 to $2.69 per share.  These disclosures, which Plaintiffs contend partially revealed to investors that Singh had been engaged in impropriety (which was eventually revealed to be the stock promotion scheme), resulted in an aggregate stock drop of $0.70 per share.  Third, on December 11, 2013, the Company disclosed that its ICT-107 Phase 2 study failed to meet the "gold standard primary endpoint of overall survival" as the intent-to-treat population did not reach statistical significance with respect to overall survival.  In reaction to this news, shares of IMUC dropped approximately 60%, from $2.72 per share to $1.10 per share.  Fourth, on June 1, 2014, IMUC disclosed that the Phase 2 trial did not achieve its primary endpoint for the entire patient population or the patient subgroups.  IMUC's stock price fell more than 14% from $1.34 on May 30, 2014 to $1.15 on June 2, 2014.

The stock promotion scheme was first acknowledged on March 30, 2016, when IMUC announced it had entered into an agreement with the SEC regarding the scheme. Later, IMUC added more color to the proposed SEC settlement in its Form 10-K filed on March 9, 2017.  On April 10, 2017, the SEC announced enforcement actions against 27 individuals and entities behind various alleged stock promotion schemes, including Defendants IMUC, Singh, Lavos, Ramey, and French.  IMUC's stock price continued to decline between June 2, 2014 and March 30, 2016, and because the stock price had literally declined to pennies by March 30, 2016 (before a 1 to 40 split), there was no discernible impact on its stock price from the 2016-17 revelation of the alleged fraud.

Although Plaintiffs believed they could prove loss causation based on Singh's August 2012 resignation, Plaintiffs started the Class Period on May 1, 2012 because of

the five-year statute of repose, and there was limited trading in IMUC common shares between May 1, 2012 and August 20-21, 2012. Moreover, the Class's damages would be mitigated by the average price over the 90-day look-back period under the PSLRA beginning on August 21, 2012 ($2.45 per share). *See* 15 U.S.C. §78u-4(e).

Plaintiffs considered that it would be difficult to sustain claims of loss causation based on the other disclosures, and in fact had removed in the TAC the allegations relating to the March 11, 2013 disclosure that Singh was not paid severance. With respect to the December 11, 2013 and June 1, 2014 disclosures that ICT-107 had failed to achieve success in its primary endpoint, the alleged stock promotion scheme had abated with Singh's resignation in August 2012 and Plaintiffs would have had difficulty sustaining their claim that the challenged statements up to August 2012 had continued to inflate IMUC's stock price. Even with respect to the claims based on Singh's August 2012 resignation, Defendants had argued in their motion to dismiss the SAC that the mere resignation was insufficient to reveal the stock promotion scheme and that in any event Singh had resigned for reasons unrelated to the alleged fraud. *See, e.g.,* ECF No. 58 at 15-16. Although the TAC contained additional allegations with respect to Singh's resignation, including references to analyst reports (*see* ECF No. 105, ¶¶321-36), there was no certainty that Plaintiffs would be able to sustain that claim (especially in light of the Court's declared skepticism in dismissing the SAC).

Plaintiffs' damages expert has estimated that the ***maximum*** damages that could be established at trial, assuming complete success in proving liability and loss causation, for the period from May 1, 2012 through August 19, 2012, prior to Singh's resignation, would be approximately $2.0 million. Accordingly, the $1.15 million settlement represents a recovery of approximately 57.5% of the most likely maximum provable damages even if all members of the Settlement Class file claims.[4] Plaintiffs

---

[4] Although maximum recoverable damages would have been considerably greater (in the tens of millions), if Plaintiffs were able to sustain their claims based on the December 2013 or May 2014 disclosures, Plaintiffs considered the likelihood of sustaining those claims on loss causation, especially in light of the MTD Order, to be highly uncertain.

13                    Case No. 2:17-cv-03250-FMO (SK)
LEAD PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

submit that this is a very favorable outcome given the substantial risks of continuing with this complex litigation and the uncertainty inherent in establishing liability, as well as the advantages of obtaining an immediate cash benefit for the Settlement Class Members and avoiding substantial expenses of further litigation. Indeed, these percentages are well within the range of settlements that have been approved. *See Destefano v. Zynga, Inc.*, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016) ("Settlement Amount represent[ing] approximately 14 percent of likely recoverable aggregate damages at trial" was "well within the range of percentages approved in other securities-fraud related actions."); *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (settlement representing "approximately 8% of the maximum recoverable damages…equals or surpasses the recovery in many other securities class actions"); *In re Zynga Inc. Secs. Litig.*, 2015 WL 6471171, at *11 (N.D. Cal. Oct. 27, 2015) (14% of estimated damages "exceeds the typical recovery"); *Omnivision*, 559 F. Supp. 2d at 1042 (settlement representing 9% of maximum damages fair and reasonable and "higher than the median percentage of investor losses recovered in recent shareholder class action settlements").

In any event, IMUC had only a limited ability to pay a judgment. Although IMUC had an insurance policy that will not be fully dissipated by the Settlement, that insurance policy would continue to be dissipated by continued litigation. Moreover, IMUC's current market capitalization is only $9.9 million and therefore, absent insurance, it has a limited ability to fund a settlement or discharge a judgment after trial and all appeals.

Accordingly, Co-Lead Counsel believe, based on their experience, knowledge of the strengths and weaknesses of the case, similar settlement awards, and all other factors considered in evaluating proposed class action settlements, that the proposed Settlement of $1,150,000 in cash is fair, reasonable, adequate and in the best interests of all Settlement Class Members.

The proposed Plan of Allocation discounts a Class Member's Allowable Loss by

90% based on the stock price declines in December 2013 and May 2014 based on Plaintiffs' assessment of the much greater risk of sustaining those claims.

## IV. CERTIFICATION OF THE SETTLEMENT CLASS UNDER RULE 23 IS APPROPRIATE

For the sole purpose of implementing the proposed Settlement, Plaintiffs seek and Defendants agree to the certification of a Settlement Class defined as all persons and entities who purchased or otherwise acquired IMUC common stock on the open market during the Class Period.  As discussed below, all requirements of Rule 23 are satisfied and certification of a settlement class is appropriate here.

### A.   The Settlement Class Members are so Numerous that Joinder is Impracticable

The numerosity requirement is met where "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  While there is no magic number by which the numerosity requirement will be deemed to have been met, courts will generally find a class sufficiently numerous if it consists of 40 or more members. *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009). While the precise number of the Settlement Class Members is unknown, as of the filing of the TAC, the Company had over 41.9 million shares of common stock issued and outstanding during the Class Period.

### B.   Common Questions of Law or Fact Exist

Commonality is satisfied "if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  The "commonality requirement has been 'construed permissively,' and its requirements deemed 'minimal.'" *Estrella v. Freedom Fin'l Network,* 2010 WL 2231790, at *7 (N.D. Cal. June 2, 2010).  In fact, "all questions of fact and law need not be common to satisfy the rule…a single common question will do." *Des Roches v. Cal. Physicians' Serv.*, 320 F.R.D. 486, 496 (N.D. Cal. 2017) (internal quotations omitted).

This case presents numerous common questions of both law and fact common to all Settlement Class Members, including:  (a) whether the federal securities laws were

violated by Defendants' acts as alleged in the TAC, including whether Defendants made false and misleading representations regarding the purported success of IMUC's ICT-107 trials and whether Defendants failed to disclose that IMUC paid for promotional "articles" to make such false and misleading statements about the ICT-107 trials; (b) whether Defendants participated in and pursued the stock promotion scheme, as alleged in the TAC; (c) whether Defendants acted willfully, with knowledge or severe recklessness, in omitting and/or misrepresenting material facts regarding the ICT-107 trials and IMUC's paid-for promotional "articles"; (d) whether the prices of IMUC common stock during the Class Period were artificially inflated due to the material nondisclosures and/or misrepresentations alleged in the TAC, including misrepresentations regarding the ICT-107 trials and the failure to disclose IMUC's paid-for promotional "articles"; and (e) whether the members of the Class sustained damages and, if so, the proper measure of damages.

**C.    Plaintiffs' Claims are Typical of Those of the Settlement Class**

"Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "In determining whether typicality is met, the focus should be on the defendants' conduct and Plaintiffs' legal theory, not the injury caused to the plaintiff." *Lozano v. AT&T Wireless Serv., Inc.*, 504 F.3d 718, 734 (9th Cir. 2007) (internal quotations omitted). Thus, typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Estakhrian v. Obenstine*, 320 F.R.D. 63, 83 (C.D. Cal. 2017).

Here, Plaintiffs' claims are similar to the claims of the other Settlement Class Members. Plaintiffs, like all Settlement Class Members, purchased IMUC stock during the Class Period when it was artificially inflated. Defendants' alleged course of

conduct described in the TAC uniformly affected all Settlement Class Members, as they each allegedly suffered economic injury from the decline in market value following the alleged corrective disclosures.  Thus, the typicality requirement of Rule 23(a)(3) is met.

**D.    Plaintiffs are Adequate Representatives of the Settlement Class**

The representative parties must satisfy Rule 23(a)'s adequacy requirement by showing that they will "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).  The factors relevant to a determination of adequacy are: (1) the absence of potential conflicts between the named plaintiff and his counsel with other class members; and (2) that counsel chosen by the representative party is qualified, experienced and able with the named plaintiff to vigorously conduct the litigation.  *See Hanlon*, 150 F.3d at 1020.

There are no apparent conflicts of interest between Plaintiffs and the absent Settlement Class Members.  Indeed, Plaintiffs have vigorously prosecuted this action from the outset and have reached a resolution that is in the best interests of the Settlement Class.  *See* Declarations of Kaye and Leason, filed herewith, Exs. 1 and 2.

Moreover, the Court previously determined that Co-Lead Counsel, Levi & Korsinsky, LLP and Wolf Popper LLP, are qualified to represent the Settlement Class. And as set out in their firm résumés, previously filed with the Court, Co-Lead Counsel have extensive experience prosecuting securities class actions.

**E.    The Requirements of Rule 23(b)(3) are Satisfied**

Rule 23(b)(3) authorizes class certification where common questions of law or fact predominate over any individual questions and a class action is superior to other available means of adjudication.  *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).  This case easily meets Rule 23(b)(3)'s requirements.

### 1.    Common Legal and Factual Questions Predominate

"Predominance is a test readily met in certain cases alleging…securities fraud."

*Amchem*, 521 U.S. at 625. As discussed above in Section IV.B, there are a number of common questions of law and fact that warrant class certification of this matter. In this securities fraud case, Defendants' alleged liability arises from their conduct with respect to a stock promotion scheme that touted the purported success of IMUC's ICT-107 trials. Whether Defendants' publicly disseminated releases and statements during the Settlement Class Period omitted and/or misrepresented material facts about the ICT-107 trials is the central issue in this case and predominates over any individual issue that theoretically might arise. *See Paggos*, 2017 WL 3084162, at *5 ("[W]hether Defendants' publicly disseminated releases and statements during the Settlement Class Period omitted and/or misrepresented material facts is the central issue in this case and predominates over any individual issue that theoretically might arise."). Thus, the predominance requirement is satisfied here.

**2.    A Class Action is the Superior Means to Adjudicate Plaintiffs' and Settlement Class Members' Claims**

There can be little doubt that resolving all Settlement Class Members' claims through a single class action is superior to a series of individual lawsuits. As explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial." 521 U.S. at 620. Thus, any manageability problems that may have existed here—and Plaintiffs know of none—are eliminated by the Settlement. In any event, given the alternatives, *e.g.*, unnecessarily burdening the judiciary with numerous actions involving relatively small amounts of damages, which "would prove uneconomic for potential plaintiffs" where "litigation costs would dwarf potential recovery," resolving this case on a class-wide basis is clearly preferable. *Hanlon*, 150 F.3d at 1023.

**V.    THE PROPOSED FORM AND METHOD OF CLASS NOTICE ARE CONSTITUTIONALLY SOUND AND APPROPRIATE**

Preliminary approval of the proposed Settlement permits notice to be given to the

Settlement Class Members of a hearing on final settlement approval, at which they and the Settling Parties may be heard with respect to final approval. *See Manual for Complex Litigation*, Third, §23.14 (West ed. 1995).  Here, the proposed notice and claims administration procedures satisfy due process and provide adequate notice by providing "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotations omitted).

In order to limit costs expended from the Settlement Fund, Plaintiffs propose to mail a Postcard Notice (Exhibit A-1 to the Stipulation) to all Settlement Class Members.  The Notice, Proof of Claim, and Exclusion Form will be available free of charge, either by download from the settlement website or by contacting the Claims Administrator, who will mail them copies.  A Summary Notice will also be published online on *GlobeNewswire*.

The proposed Postcard Notice provides Settlement Class Members with information in a fair, concise and neutral way regarding:  (1) the nature of the lawsuit; (2) a summary of the substance of the settlement terms; (3) the class definition; (4) the existence of and their rights with respect to the Action, including instructions on how persons can exclude themselves from the Settlement Class, submit a Proof of Claim, object to the Settlement, and request to appear at the Final Approval Hearing; (5) the final approval hearing date; (6) a statement that the Court has preliminarily approved the settlement; (7) a statement that Class Members will release the settled claims unless they opt out; (8) Co-Lead Counsel's intended request for an award of attorneys' fees and reimbursement of costs and expenses, including the maximum amounts to be requested; (9) Plaintiffs' intended request for reimbursement of costs and expenses, including lost wages; (10) that taxes, attorneys' fees, costs and expenses, and notice and

administration costs will be deducted from the Settlement Fund before payment to Settlement Class Members; and (11) instructions for obtaining a copy of the Notice, Proof of Claim, and exclusion form.  Under Rule 23(c)(2), notice by mail provides such "individual notice to all members."  *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974).

The proposed Notice (Exhibit A-2 to the Stipulation) provides more detailed information concerning the topics in the Postcard Notice, including the formula used to calculate payments to Settlement Class Members, and a description of the proposed plan of allocation.  The proposed Notice provides that objections may be mailed, in writing, directly to the Court and provides the appropriate court address to which Settlement Class Members should send those objections.  It also provides information on how and where to submit requests for exclusion from the Settlement Class.

The proposed Summary Notice (Exhibit A-3 to the Stipulation) also provides essential information about the Action and the Settlement, including an abbreviated description of the Action and the proposed Settlement and explains how to obtain the more detailed Notice.  The Summary Notice also explains how to obtain a Notice, Proof of Claim, or Exclusion Form, free of charge, from the Claim's Administrator.

Plaintiffs propose that the notice and claims process be administered by A.B. Data Ltd. ("A.B. Data"), an independent settlement and claims administrator selected by Plaintiffs after a competitive bidding process.  If the Court preliminarily approves the Settlement, IMUC will provide contact information of potential Settlement Class Members to A.B. Data for the purpose of identifying and giving notice to the Settlement Class and A.B. Data will mail the Postcard Notice to all identified potential Settlement Class Members.  *See* Stipulation ¶7.2(a).  A.B. Data will also use reasonable efforts to give notice to brokerage firms and other nominees who purchased IMUC stock during the Class Period on behalf of other beneficial owners.  These nominee purchasers will either forward the Postcard Notice or provide the names and addresses of the beneficial owners to A.B. Data, which will then promptly send the Postcard Notice by first class

1  mail to such identified beneficial owners.  A.B. Data will also cause the Summary

2  Notice to be published on *GlobeNewswire*.  *See* Stipulation ¶7.2(a).  A.B. Data will also

3  publish the Notice and other materials on a settlement website.

4      Courts routinely find comparable notice programs, combining individual notice

5  supplemented with publication notice, sufficient to provide notice to Class Members.

6  *See, e.g.*, *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 330, 331 (C.D. Cal. 2016)

7  (Olguin, J.) (adequate notice given by first class mail and publication satisfied due

8  process); *Garcia v. Ceva Logistics, U.S.A.*, 2017 U.S. Dist. LEXIS 177946, at *13

9  (C.D. Cal. Oct. 23, 2017) (preliminarily approving and ordering a notice that included,

10  *inter alia*, the mailing of postcard notice to members of the class that included a link to

11  a website where class members could access the long-for notice, claim form, and opt-

12  out form); *Jonsson v. USCB, Inc.*, 2015 U.S. Dist. LEXIS 69934 (C.D. Cal. May 28,

13  2015) (Olguin, J.) (finally approving settlement of class action where notification

14  procedure included the mailing of a postcard notice that directed class members to a

15  website containing the long form notice, claim form, and request for exclusion).

16      In sum, the means and forms of notice proposed here constitute valid and

17  sufficient notice to the Settlement Class and the best notice practicable under the

18  circumstances, and comply fully with the requirements of Rule 23 and due process.

19  *See, e.g.*, *In re Cement and Concrete Antitrust Litig.*, 817 F.2d 1435, 1440 (9th Cir.

20  1987), *rev'd on other grounds*, 490 U.S. 93 (1989) ("Notice is satisfactory if it

21  'generally describes the terms of the settlement in sufficient detail to alert those with

22  adverse viewpoints to investigate and to come forward and be heard.'").

23      A.B. Data's fees for administration of the Settlement are charged on a per-claim

24  basis and expenses will be billed separately (including expenses for printing and

25  mailing the Postcard Notice, publishing the Summary Notice, printing and mailing

26  copies of the Notice, establishing and maintaining the settlement website, and

27  establishing and operating the toll-free telephone helpline).  A.B. Data has agreed to cap

28  their fees for administration of the Settlement at $59,169.16.  At this time, A.B. Data

estimates, based on the widely held nature of IMUC's common stock and length of the Class Period, that approximately 80,000 Postcard Notices will be mailed and 15,000 claims will be processed. A number of Notices, Exclusion Forms, and Proofs of Claim will also have to be mailed in response to requests from Settlement Class Members. Based on these estimates, A.B. Data estimates that the total Notice and Administration Costs and Expenses for the Action should not exceed $61,000 (in addition to A.B. data's fees). Because the costs and expenses for administering the Settlement are highly dependent on how many Postcard Notices, Notices, Claim Forms, and Exclusion Forms are ultimately printed and mailed, and the amounts that third-party record owners request as reimbursement for mailing notices, Co-Lead Counsel and A.B. Data are not able to provide the Court with a firm cap on costs and expenses of administration at this time.

The Stipulation provides that $50,000 may be paid towards Notice and Administration Costs upon Preliminary Approval and without further Order of the Court. These costs are necessary in order to effectuate the Settlement, and at approximately 4.3% of the total value of the Settlement, the $50,000 of anticipated fees is reasonable. If the Settlement is approved, the Notice and Administration Costs will be paid from the Settlement Fund.

## VI.   THE PROPOSED AWARDS TO CLASS REPRESENTATIVES FOR COSTS AND EXPENSES, INCLUDING LOST WAGES, ARE FAIR AND REASONABLE

The PSLRA provides that a Court may award "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4). Courts must "scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). In evaluating whether the Settlement grants preferential treatment to class representatives, the Court may consider whether there is a "significant disparity between the incentive awards and the payments to the rest of the class members" such

that it creates a conflict of interest.  *Radcliffe*, 715 F.3d at 1165.[5]  Relevant factors also include "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions,…[and] the amount of time and effort the plaintiff expended in pursuing the litigation."  *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (citation omitted).[6]

Here, the proposed awards do not create a conflict of interest between the Plaintiffs and Class Members.  Critically, unlike in *Radcliffe*, Plaintiffs' proposed awards are not conditioned on their approval of the Settlement.  *See* Ex. 1, ¶20; Ex. 2. ¶18.  In making the decision to sign the Settlement, Plaintiffs understood that they had the right to support, object to, or comment upon the proposed settlement without affecting the possibility of an incentive award.  Ex. 1, ¶¶16-18; Ex. 2. ¶¶14-16.  Plaintiffs also understand that the Court may award them less than the $2,500 each requested, or award no reimbursement of costs and expenses (including lost wages) at all.  *See* Ex. 1 ¶20; Ex. 2 ¶18.

When appropriately measured against the gross settlement fund (*see In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015)), the requested awards makes up less than 0.5% of the fund.  The exact amount that any class member may receive from the Settlement cannot be determined at this time but will be based on the number of shares purchased and sold during the class period and the dates and prices at which those shares traded and the comparable information for other class members. It is currently anticipated however that the lead plaintiff payments will exceed the average class payment.

Further, the proposed award of no more than $2,500 per Plaintiff is well within

---

[5] "Incentive awards are fairly typical in class action cases. Such awards are discretionary and are intended to compensate class representatives for work done on behalf of the class." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (internal citations omitted).  These payments work both as an independent inducement to participate in the suit as well as compensation for time spent in litigation activities. *See id.* at 958-59.

[6] Additional factors may include "the risk to the class representative in commencing suit…the notoriety and personal difficulties encountered by the class representative…[and] the duration of the litigation." *Gudimetla v. Ambow Educ. Holding*, 2015 WL 12752443, at *9 (C.D. Cal. Mar. 16, 2015).

1  the range dictated by applicable law as set forth in *Radcliffe*.  *See Bellinghausen v.*
2  *Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (collecting cases and stating
3  "[i]ncentive awards typically range from $2,000 to $10,000").  This is also consistent
4  with awards granted in other securities class actions.  *See, e.g., Flynn v. Sienta, Inc.*,
5  No. 2:15cv7548, Dkt. 124 (C.D. Cal. May 22, 2017) (awarding two lead plaintiffs
6  $5,000 each); *Paggos*, 2017 WL 3084162, at *12 (post-*Radcliffe* securities class action
7  preliminarily approving $5,000 award to each of two representatives as long as the
8  provision is included in the stipulation); *In re Galena Biopharma, Inc. Sec. Litig.*, 2016
9  WL 3457165, at *12 (D. Or. June 24, 2016) (post-*Radcliffe* decision awarding $5,000
10 incentive award to four representatives in securities fraud and related derivative action);
11 *In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *30, 33 (C. D. Cal. Jul.
12 28, 2014) (post-*Radcliffe* securities class action granting award of $6,600 to
13 representative and commenting that this amount was "consistent with amounts courts
14 typically award"); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000)
15 ($5,000 incentive award approved).

16     Moreover, Plaintiffs' incentive awards are reasonable because they "remained
17 fully involved and expended considerable time and energy during the course of the
18 litigation."  *Schaffer v. Litton Loan Servicing, LP,* 2012 WL 10274679, at *19 (C.D.
19 Cal. Nov. 13, 2012).  As detailed in their declarations, Plaintiffs provided counsel with
20 the facts and circumstances of each of their investments in IMUC; agreed to pursue this
21 action for the benefit of all similarly situated investors; made themselves available to
22 counsel to confer regarding questions that arose during litigation and to receive updates
23 on the progress of the case; reviewed relevant pleadings; and evaluated and approved
24 the settlement for the benefit of the Class.  *See* Ex. 1 ¶¶2-17; Ex. 2 ¶¶2-15.

25     Accordingly, while Plaintiffs may not have spent hundreds of hours on this
26 matter, their willingness to represent the Class and keep this Action moving towards
27 resolution ultimately ensured that Class Members would be compensated for their
28 injuries.  For these reasons, the Court should award each Plaintiff reimbursement of

their reasonable costs and expenses (including lost wages) directly related to the representation of the class of no more than $2,500 per Plaintiff.

## VII.   PROPOSED SCHEDULE

Plaintiffs respectfully request the Court schedule the dates required by, and set forth in the [Proposed] Preliminary Approval Order, which Lead Counsel will present to the Court.  Specifically, Plaintiffs request the Court schedule the following dates:

| Event | Deadline for Compliance |
|---|---|
| Last day to complete mailing of Notice and Proof of Claim Form | No later than twenty-eight (28) calendar days after entry of Preliminary Approval Order |
| Last day to publish Summary Notice | No later than seven (7) calendar days after the Notice Date |
| Last day for filing and serving papers in support of final approval of the proposed Settlement, and the applications for Fee and Expense Awards | No later than thirty-five (35) calendar days prior to the Final Fairness Hearing |
| Last day for Settlement Class Members to submit comments in support of or in opposition to the proposed Settlement, and the applications for Fee and Expense Awards | No later than twenty-one (21) calendar days prior to the Final Fairness Hearing |
| Last day for potential Settlement Class Members to request exclusion from the Settlement Class | No later than twenty-one (21) calendar days prior to the Final Fairness Hearing |
| Last day for filing and serving papers in response to objections to the proposed Settlement, and the applications for Fee and Expense Awards | No later than seven (7) calendar days prior to the Final Fairness Hearing |
| Final Approval Hearing | At the Courts earliest convenience at least 128 days after Preliminary Approval |

## VIII.   CONCLUSION

The proposed Settlement is presumptively fair and presents no obvious deficiencies.  Accordingly, the Court should grant preliminary approval of the proposed Settlement and enter an order substantially in the form of the accompanying [Proposed] Preliminary Approval Order.

1
2   Dated: September 13, 2018                Respectfully submitted,

3                                            By:    /s/ Lionel Z. Glancy
4                                            **GLANCY PRONGAY & MURRAY LLP**
                                             Lionel Z. Glancy
5                                            Robert V. Prongay
                                             Lesley F. Portnoy
6                                            Charles H. Linehan
7                                            1925 Century Park East, Suite 2100
                                             Los Angeles, CA 90067
8                                            Telephone:  (310) 201-9150
                                             Facsimile:   (310) 201-9160
9                                            Email:   lglancy@glancylaw.com
10
11                                           *Counsel for Plaintiffs*

12                                           **WOLF POPPER LLP**
                                             Robert C. Finkel
13                                           Joshua W. Ruthizer
                                             845 Third Avenue
14                                           New York, NY 10022
15                                           Telephone: (212) 759-4600
                                             Facsimile:  (212) 486-2093
16                                           E-mail: rfinkel@wolfpopper.com
                                             E-mail: jruthizer@wolfpopper.com
17
18                                           **LEVI & KORSINSKY LLP**
                                             Rosemary M. Rivas
19                                           James Grohsgal
20                                           44 Montgomery Street, Suite 650
                                             Telephone: (415) 373-1671
21                                           E-mail: rrivas@zlk.com
                                             E-mail: jgrohsgal@zlk.com
22
23                                           *Co-Lead Counsel for Plaintiffs and the Class*
24
25
26
27
28

LEAD PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

## **PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.   On September 13, 2018, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.   Executed on September 13, 2018, at Los Angeles, California.

*s/ Lionel Z. Glancy*
Lionel Z. Glancy

# Mailing Information for a Case 2:17-cv-03250-FMO-SK Arthur Kaye IRA FCC as Custodian DTD 6-8-00 v. ImmunoCellular Therapeutics, Ltd. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Tijana Martinovic Brien**
  tbrien@cooley.com,ywaldronrobinson@cooley.com

- **Angela L Dunning**
  adunning@cooley.com

- **John C Dwyer**
  jdwyer@cooley.com,bgiovannoni@cooley.com

- **Robert C Finkel**
  rfinkel@wolfpopper.com,cdunleavy@wolfpopper.com

- **Edward Gartenberg**
  egartenberg@gghslaw.com,smelara@gghslaw.com,mdolukhanyan@gghslaw.com

- **Lionel Zevi Glancy**
  lglancy@glancylaw.com

- **James Grohsgal**
  jgrohsgal@zlk.com

- **Jeffrey M Kaban**
  jkaban@cooley.com,lalmanza@cooley.com

- **Jessie A R Simpson Lagoy**
  jsimpsonlagoy@cooley.com,galancr@cooley.com

- **Charles Henry Linehan**
  clinehan@glancylaw.com,charles-linehan-8383@ecf.pacerpro.com

- **Francisca M Mok**
  fmok@reedsmith.com,ehalbreich@reedsmith.com,cwirtschafter@reedsmith.com,jwernick@reedsmith.com,aturner@reedsmith.com

- **Lesley F Portnoy**
  LPortnoy@glancylaw.com,lesley-portnoy-3007@ecf.pacerpro.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,CLinehan@glancylaw.com,info@glancylaw.com,robert-prongay-0232@ecf.pacerpro.com

- **Rosemary M Rivas**
  rrivas@zlk.com,ebigelow@zlk.com,shopkins@zlk.com,jgrohsgal@zlk.com

- **Laurence M Rosen**
  lrosen@rosenlegal.com

- **Joshua W Ruthizer**
  jruthizer@wolfpopper.com

- **James L Sanders**
  jsanders@reedsmith.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Brian Nichols**
2819 Burnside Drive
Burlington, KY 41005