**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ARTHUR KAYE IRA FCC AS
CUSTODIAN DTD 6-8-00, individually
and on behalf of all others similarly
situated,

     Plaintiff,

  v.

IMMUNOCELLULAR THERAPEUTICS,
LTD., et al.,

     Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. CV 17-3250 FMO (SKx)


**ORDER RE: MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT AND CERTIFICATION OF
SETTLEMENT CLASS**

   Having reviewed and considered all the briefing filed with respect to plaintiff's Unopposed

Motion for an Order Granting Preliminary Approval of Class Action Settlement, (Dkt. 120,

"Motion"), and the oral argument presented at the hearing on November 1, 2018, the court

concludes as follows.

## BACKGROUND

   On May 1, 2017, plaintiff Arthur Kaye IRA FCC as Custodian DTD 6-8-00 ("plaintiff" or

"Kaye") filed a class action complaint against defendants ImmunoCellular Therapeutics, Ltd.

("IMUC"); David Fractor ("Fractor"); John S. Yu ("Yu"); Andrew Gengos ("Gengos"); Manish Singh

("Singh"), Lavos, LLC ("Lavos"); Lidingo Holdings, LLC ("Lidingo"); Kamilla Bjorlin ("Bjorlin");

Andrew Hodge ("Hodge"); Brian Nichols ("Nichols") and Vincent Cassano ("Cassano"), (see Dkt.

1, Complaint at ¶¶ 18-28), asserting violations of the Securities Exchange Act and associated regulations.  (See id. at ¶¶ 142-158).  Plaintiff filed the operative Third Amended Complaint on June 29, 2018.  (See Dkt. 105, Third Amended Complaint ("TAC"))

This securities fraud class action case arises from allegations that IMUC and its corporate executives tried to artificially inflate the value of the company's stock by making fraudulent claims to the public.  (See Dkt. 105, TAC at ¶¶ 4-10).  IMUC is a company that develops cancer treatments.  (See id. at ¶ 2).  One of IMUC's products, named ICT-107, was designed to treat certain kinds of brain cancer.  (See id.).  Plaintiff alleges that IMUC's chief executive officer, Singh, developed a scheme to release a series of articles to the public falsely claiming that clinical trials for ICT-107 were proceeding much better than they actually were.  (See id. at ¶ 4).  Toward this end, Singh entered into an agreement with Lidingo, a stock promotion company, whereby Lidingo would draft and publish the misleading articles on popular investor websites.  (See id. at ¶¶ 4-5).  The fraudulent articles created the impression that ICT-107 was a more promising treatment than it actually was, and made it seem more likely that IMUC would be acquired by a larger pharmaceutical company.  (See id. at ¶ 5).  This caused IMUC's stock to rise from $1.43 a share in November 2011 to $3.02 a share in August 2012.  (Id.).

In August 2012, IMUC's stock began to decline, which plaintiff attributed to Singh's resignation from the company.  (See Dkt. 105, TAC at ¶ 14).  Then, in December 2013, IMUC publicly divulged that the second round of clinical trials for ICT-107 had not been successful.  (See id. at ¶ 17).  During that month, IMUC's stock declined to $1.10 per share.  (Id. at ¶ 18).  Plaintiff alleged that defendants violated the Securities Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a) and associated regulations.  (See id. at ¶ 20).  As relief, plaintiff seeks damages, including pre-and-post-judgment interest, as well as "such other and further relief as this Court may deem just and proper."  (See id. at Prayer for Relief).

## LEGAL STANDARD

"[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the

1  certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir.
2  2003).

3  I.    CLASS CERTIFICATION.

4         At the preliminary approval stage, the court "may make either a preliminary determination
5  that the proposed class action satisfies the criteria set out in Rule 23[1] or render a final decision
6  as to the appropriateness of class certification." Smith v. Wm. Wrigley Jr. Co., 2010 WL 2401149,
7  *3 (S.D. Fla. 2010) (internal citation omitted); see also Sandoval v. Roadlink USA Pac., Inc., 2011
8  WL 5443777, *2 (C.D. Cal. 2011) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620, 117
9  S.Ct. 2231, 2248 (1997)) ("Parties seeking class certification for settlement purposes must satisfy
10  the requirements of Federal Rule of Civil Procedure 23[.]").  "A court considering such a request
11  should give the Rule 23 certification factors 'undiluted, even heightened, attention in the settlement
12  context.'" Sandoval, 2011 WL 5443777, at *2 (quoting Amchem, 521 U.S. at 620, 117 S.Ct. at
13  2248).  "Such attention is of vital importance, for a court asked to certify a settlement class will lack
14  the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings
15  as they unfold." Amchem, 521 U.S. at 620, 117 S.Ct. at 2248.

16        A party seeking class certification must first demonstrate that:  "(1) the class is so numerous
17  that joinder of all members is impracticable; (2) there are questions of law or fact common to the
18  class; (3) the claims or defenses of the representative parties are typical of the claims or defenses
19  of the class; and (4) the representative parties will fairly and adequately protect the interests of the
20  class." Fed. R. Civ. P. 23(a).

21        "Second, the proposed class must satisfy at least one of the three requirements listed in
22  Rule 23(b)." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345, 131 S.Ct. 2541, 2548 (2011).
23  Rule 23(b) is satisfied if:

24            (1) prosecuting separate actions by or against individual class members
25            would create a risk of:

26

27  _____

28      [1]  All "Rule" references are to the Federal Rules of Civil Procedure.

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(1)-(3).

The party seeking class certification bears the burden of demonstrating that the proposed class meets the requirements of Rule 23. See Dukes, 564 U.S. at 350, 131 S.Ct. at 2551 ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."). However, courts need not consider the Rule 23(b)(3) issues regarding manageability of the class action, as settlement obviates the need for a manageable

1  trial.  See Morey v. Louis Vuitton N. Am., Inc., 2014 WL 109194, *12 (S.D. Cal. 2014) ("[B]ecause

2  this certification of the Class is in connection with the Settlement rather than litigation, the Court

3  need not address any issues of manageability that may be presented by certification of the class

4  proposed in the Settlement Agreement."); Rosenburg v. I.B.M., 2007 WL 128232, *3 (N.D. Cal.

5  2007) (discussing "the elimination of the need, on account of the Settlement, for the Court to

6  consider any potential trial manageability issues that might otherwise bear on the propriety of class

7  certification").

8  II.    FAIRNESS OF CLASS ACTION SETTLEMENT.

9         Rule 23 provides that "the claims, issues, or defenses of a certified class may be settled

10  . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "The primary concern of [Rule 23(e)]

11  is the protection of th[e] class members, including the named plaintiffs, whose rights may not have

12  been given due regard by the negotiating parties."  In re Syncor ERISA Litig., 516 F.3d 1095,

13  1101-02 (9th Cir. 2008) (quoting Officers for Justice v. Civil Service Comm'n of the City & Cnty.

14  of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982), cert. denied 459 U.S. 1217 (1983)).

15  Accordingly, a district court must determine whether a proposed class action settlement is

16  "fundamentally fair, adequate, and reasonable."  Staton, 327 F.3d at 959; see Fed. R. Civ. Proc.

17  23(e).  Whether to approve a class action settlement is "committed to the sound discretion of the

18  trial judge."  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir.), cert. denied, Hoffer

19  v. City of Seattle, 506 U.S. 953 (1992) (internal quotation marks and citation omitted).

20         "If the [settlement] proposal would bind class members, the court may approve it only after

21  a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).

22  "[S]ettlement approval that takes place prior to formal class certification requires a higher standard

23  of fairness [given t]he dangers of collusion between class counsel and the defendant, as well as

24  the need for additional protections when the settlement is not negotiated by a court designated

25  class representative[.]"  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  As the

26  Ninth Circuit has observed, "[p]rior to formal class certification, there is an even greater potential

27  for a breach of fiduciary duty owed the class during settlement.  Accordingly, such agreements

28  must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of

1    interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair."

2    In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011).

3         Approval of a class action settlement requires a two-step process – a preliminary approval

4    followed by a later final approval.  See West v. Circle K Stores, Inc., 2006 WL 1652598, *2 (E.D.

5    Cal. 2006) ("[A]pproval of a class action settlement takes place in two stages."); Tijero v. Aaron

6    Bros., Inc., 2013 WL 60464, *6 (N.D. Cal. 2013) ("The decision of whether to approve a proposed

7    class action settlement entails a two-step process.").  At the preliminary approval stage, the court

8    "evaluate[s] the terms of the settlement to determine whether they are within a range of possible

9    judicial approval." Wright v. Linkus Enters., Inc., 259 F.R.D. 468, 472 (E.D. Cal. 2009).  Although

10   "[c]loser scrutiny is reserved for the final approval hearing[,]" Harris v. Vector Mktg. Corp., 2011

11   WL 1627973, *7 (N.D. Cal. 2011), "the showing at the preliminary approval stage – given the

12   amount of time, money and resources involved in, for example, sending out new class notices –

13   should be good enough for final approval."  Spann v. J.C. Penney Corp., 314 F.R.D. 312, 319

14   (C.D. Cal. 2016).  "At this stage, the court may grant preliminary approval of a settlement and

15   direct notice to the class if the settlement: (1) appears to be the product of serious, informed,

16   non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant

17   preferential treatment to class representatives or segments of the class; and (4) falls within the

18   range of possible approval." Id. (internal quotation marks omitted); Harris, 2011 WL 1627973, at

19   *7 (same); Cordy v. USS-Posco Indus., 2013 WL 4028627, *3 (N.D. Cal. 2013) ("Preliminary

20   approval of a settlement and notice to the proposed class is appropriate if the proposed settlement

21   appears to be the product of serious, informed, non-collusive negotiations, has no obvious

22   deficiencies, does not improperly grant preferential treatment to class representatives or segments

23   of the class, and falls within the range of possible approval.") (internal quotation marks omitted).

24

25                                        **DISCUSSION**

26   I.     CLASS CERTIFICATION.

27          A.     Rule 23(a) Requirements.

28                 1.     **Numerosity**.

The first prerequisite of class certification requires that the class be "so numerous that joinder of all members is impractical[.]" Fed. R. Civ. P. 23(a)(1). Although impracticability does not hinge only on the number of members in the putative class, joinder is usually impracticable if a class is "large in numbers." See Jordan v. Cnty. of Los Angeles, 669 F.2d 1311, 1319 (9th Cir.), vacated on other grounds, 459 U.S. 810 (1982) (class sizes of 39, 64, and 71 are sufficient to satisfy the numerosity requirement); Jimenez v. Domino's Pizza, Inc., 238 F.R.D. 241, 247 (C.D. Cal. 2006) (same). "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership dips below 21." Slaven v. BP Am., Inc., 190 F.R.D. 649, 654 (C.D. Cal. 2000); see Tait v. BSH Home Appliances Corp., 289 F.R.D. 466, 473 (C.D. Cal. 2012) ("A proposed class of at least forty members presumptively satisfies the numerosity requirement.").

Here, the members of the class are so numerous that joinder of all members is impracticable. According to plaintiff, nearly 42 million shares of IMUC stock were issued during the class period. (See Dkt. 120, Motion at 15); (Dkt. 105, TAC at ¶¶ 180, 200) (describing how millions of shares of IMUC stock were traded following publication of the fraudulent articles); see also In re Cooper Cos. Inc. Sec. Litig., 254 F.R.D. 628, 634 (C.D. Cal. 2009) ("The Court certainly may infer that, when a corporation has millions of shares trading on a national exchange, more than 40 individuals purchased stock over the course of more than a year[,]" thereby satisfying numerosity.); Nguyen v. Radient Pharm. Corp., 287 F.R.D. 563, 569 (C.D. Cal. 2012) (same).

2. **Commonality**.

The commonality requirement is satisfied if "there are common questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). Commonality requires plaintiff to demonstrate that his claims "depend upon a common contention . . . [whose] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 564 U.S. at 350, 131 S.Ct. at 2551; see Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1172 (9th Cir. 2010) (The commonality requirement demands that "class members' situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief.") (internal quotation marks omitted). "The plaintiff must demonstrate the capacity of

7

classwide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation." Mazza v. Am. Honda Motor Co., 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks omitted). "This does not, however, mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single significant question of law or fact." Abdullah v. U.S. Sec. Assocs., Inc., 731 F.3d 952, 957 (9th Cir. 2013), cert. denied, 135 S.Ct. 53 (2014) (emphasis and internal quotation marks omitted); see Mazza, 666 F.3d at 589 (characterizing commonality as a "limited burden[,]" stating that it "only requires a single significant question of law or fact"). Proof of commonality under Rule 23(a) is "less rigorous" than the related preponderance standard under Rule 23(b)(3). See Mazza, 666 F.3d at 589. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Hanlon, 150 F.3d at 1019.

Here, the litigation involves common class-wide issues that are apt to drive the resolution of plaintiff's claims. This litigation entails purchasers of IMUC stock who were harmed by a fraudulent scheme to inflate the stock's value. (See Dkt. 105, TAC at ¶¶ 43-336). Common questions include: whether defendants engaged in a scheme to disseminate false information to the public in order to increase the price of IMUC's stock, and whether the decrease in the stock's value was attributable to this scheme. (See id.).

### 3. **Typicality**.

"Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks and citation omitted). To demonstrate typicality, plaintiff's claims must be "reasonably co-extensive with those of absent class members[,]" although "they need not be substantially identical." Hanlon, 150 F.3d at 1020; see Ellis, 657 F.3d at 984 ("Plaintiffs must show that the named parties' claims are typical of the class."). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff[], and whether other class

members have been injured by the same course of conduct." Ellis, 657 F.3d at 984 (internal quotation marks and citation omitted).

Here, the claims of the representative plaintiff are typical of the claims of the class. Plaintiff's claims arise from the same nucleus of facts as the class and are based on the same legal theory, i.e., that defendants violated the Securities Exchange Act and regulations issued under that Act as part of an unlawful scheme to bolster IMUC stock prices. (See Dkt. 120, Motion at 16-17); see, e.g., Tanne v. Autobytel, Inc., 226 F.R.D. 659, 667 (C.D. Cal. 2005) ("Here, [lead plaintiff's] claims are typical because, just like other class members, he: (1) purchased or acquired Autobytel securities during the Class period, (2) at prices alleged to be artificially inflated by defendants' materially false and misleading statements and/or omissions, and (3) suffered damage as a result."); Brown v. NFL Players Ass'n., 281 F.R.D. 437, 442 (C.D. Cal. 2012) (typicality satisfied where plaintiff's claims were based on "the same event or practice or course of conduct that [gave] rise to the claims of other class members and . . . are based on the same legal theory") (internal quotation marks omitted). Additionally, the court is not aware of any facts that would subject the class representatives "to unique defenses which threaten to become the focus of the litigation." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).

4. **Adequacy of Representation**.

"The named Plaintiff[] must fairly and adequately protect the interests of the class." Ellis, 657 F.3d at 985 (citing Fed. R. Civ. P. 23(a)(4)). "To determine whether [the] named plaintiff[] will adequately represent a class, courts must resolve two questions: (1) do[es] the named plaintiff[] and [his] counsel have any conflicts of interest with other class members and (2) will the named plaintiff[] and [his] counsel prosecute the action vigorously on behalf of the class?" Id. (internal quotation marks and citation omitted). "Adequate representation depends on, among other factors, an absence of antagonism between representative[] and absentees, and a sharing of interest between representative[] and absentees." Id.

Here, the proposed class representative does not appear to have any conflicts of interest with the absent class members. (See Dkt. 120-1, Declaration of Arthur Kaye ("Kaye Decl.") at ¶¶ 6, 17 (stating that lead plaintiff became a class representative "both for [his] own benefit and in an

effort to maximize the recovery of similarly situated investors[,]" and that he approved the proposed settlement "based on [his] understanding of the risks and costs of continued litigation, compared to the amounts that [he] and other class members will prospectively receive from the settlement"). Under the circumstances, "[t]he adequacy-of-representation requirement is met here because Plaintiff [has] the same interests as the absent Class Members[.] Further, there is no apparent conflict of interest between the named Plaintiff['s] claims and those of the other Class Members' – particularly because the named Plaintiff [has] no separate and individual claims apart from the Class." Barbosa v. Cargill Meat Solutions Corp., 297 F.R.D. 431, 442 (E.D. Cal. 2013).

Finally, plaintiff's counsel requests, and the Settlement Agreement provides, that the court appoint as class counsel the law firms Levi & Korsinsky and Wolf Popper LLP. (See Dkt. 132, Amended Stipulation of Settlement ("Settlement Agreement") at 7). Wolf Popper has represented plaintiffs in numerous class actions and obtained favorable outcomes in a number of instances. (See Dkt. 27-4, Biographical Sketch of Wolf Popper at 2-19). Likewise, Levi & Korsinsky has extensive experience prosecuting class actions. (See Dkt. 28-2, Declaration of Rosemary M. Rivas, Exhibit 3 at 1-3). Based on Wolf Popper's and Levi & Korsinsky's representations, and having observed counsel's diligence in litigating this case, the court finds that plaintiffs' counsel are competent, and that the adequacy of representation requirement is satisfied. See Barbosa, 297 F.R.D. at 443 ("There is no challenge to the competency of the Class Counsel, and the Court finds that Plaintiffs are represented by experienced and competent counsel who have litigated numerous class action cases.").

B.    Rule 23(b) Requirements.

Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can be served best by settling their differences in a single action." Hanlon, 150 F.3d at 1022 (internal quotation marks omitted). The rule requires two different inquiries, specifically a determination as to whether:  (1) "questions of law or fact common to class members predominate over any questions affecting only individual members[;]" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); see Spann, 314 F.R.D. at 321-22.

1

           1.    **Predominance**.

2

"The Rule 23(b)(3) predominance inquiry tests whether [the] proposed class [is] sufficiently

3

cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 623, 117 S.Ct. at 2249.

4

"Rule 23(b)(3) focuses on the relationship between the common and individual issues.  When

5

common questions present a significant aspect of the case and they can be resolved for all

6

members of the class in a single adjudication, there is clear justification for handling the dispute

7

on a representative rather than on an individual basis."  Hanlon, 150 F.3d at 1022 (internal

8

quotation marks and citations omitted); see In re Wells Fargo Home Mortg. Overtime Pay Litig.,

9

571 F.3d 953, 959 (9th Cir. 2009) ("[T]he main concern in the predominance inquiry . . . [is] the

10

balance between individual and common issues.").  Additionally, the class damages must be

11

sufficiently traceable to plaintiff's liability case.  See Comcast Corp. v. Behrend, 569 U.S. 27, 35,

12

133 S.Ct. 1426, 1433 (2013).

13

      For the reasons discussed above, see supra at § I.A.2., the court is persuaded that

14

common questions predominate over individual questions.  Indeed, the single, overwhelming

15

common question of whether defendants violated the Securities Exchange Act and associated

16

regulations by making misrepresentations about the success of clinical trials for IMUC's products

17

predominates over any individual questions.  See, e.g., Durham v. Cont'l Cent. Credit, 2010 WL

18

2776088,*5 (S.D. Cal. 2010) ("Plaintiff and the proposed class members were sent the Exhibit B

19

letter within 30 days of having been sent the Exhibit A letter, raising the legal claim of

20

overshadowing in violation of 15 U.S.C. § 1692g(b). These common and central issues

21

predominate over any questions affecting only individual members.").  Finally, the relief sought

22

applies to all class members and is traceable to plaintiff's liability case.  See Comcast, 569 U.S.

23

at 35, 133 S.Ct. at 1433.  In short, common questions predominate over all others in this litigation.

24

           2.    **Superiority**.

25

"The superiority inquiry under Rule 23(b)(3) requires determination of whether the

26

objectives of the particular class action procedure will be achieved in the particular case" and

27

"necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution."

28

1  <u>Hanlon</u>, 150 F.3d at 1023.  Rule 23(b)(3) provides a list of four non-exhaustive factors relevant to

2  superiority.  <u>See</u> Fed. R. Civ. P. 23(b)(3)(A)-(D).

3         The first factor considers "the class members' interests in individually controlling the

4  prosecution or defense of separate actions."  Fed. R. Civ. P. 23(b)(3)(A).  "This factor weighs

5  against class certification where each class member has suffered sizeable damages or has an

6  emotional stake in the litigation."  <u>Barbosa</u>, 297 F.R.D. at 444.  Here, plaintiff does not assert

7  claims for emotional distress, nor is there any indication that the amount of damages any individual

8  class member could recover is significant or substantially greater than the potential recovery of

9  any other class member.  (<u>See</u>, <u>generally</u>, Dkt. 105, TAC).  The alternative method of resolution

10  is individual claims for a relatively modest amount of damages, but such claims would likely never

11  be brought, as "litigation costs would dwarf potential recovery."  <u>Hanlon</u>, 150 F.3d at 1023; <u>see</u>

12  <u>Leyva v. Medline Indus., Inc.</u>, 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the

13  putative class members' potential individual monetary recovery, class certification may be the only

14  feasible means for them to adjudicate their claims.  Thus, class certification is also the superior

15  method of adjudication."); <u>Bruno v. Quten Research Inst., LLC</u>, 280 F.R.D. 524, 537 (C.D. Cal.

16  2011), <u>reconsideration denied</u>, 280 F.R.D. 540 (2012) ("Given the small size of each class

17  member's claim, class treatment is not merely the superior, but the only manner in which to ensure

18  fair and efficient adjudication of the present action."); <u>Schwarm v. Craighead</u>, 233 F.R.D. 655, 664

19  (E.D. Cal. 2006) (finding FDCPA class action superior to individual claims because "[n]ot only are

20  most individual consumers unaware of their rights under the FDCPA, but also the size of the

21  individual claims is usually so small there is little incentive to sue individually") (internal quotation

22  marks omitted).  In short, "there is no evidence that Class members have any interest in controlling

23  prosecution of their claims separately nor would they likely have the resources to do so."  <u>Munoz</u>

24  <u>v. PHH Corp.</u>, 2013 WL 2146925, *26 (E.D. Cal. 2013).

25         The second factor to consider is "the extent and nature of any litigation concerning the

26  controversy already begun by or against class members."  Fed. R. Civ. P. 23(b)(3)(B).  Here, the

27  court is unaware of any instance in which a class member is involved in any other litigation

28  concerning the claims in this case.  (<u>See</u>, <u>generally</u>, Dkt. 120, Motion).

The third factor is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum[,]" Fed. R. Civ. P. 23(b)(3)(C), and the fourth factor relates to "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D).  As noted above, "[i]n the context of settlement . . . the third and fourth factors are rendered moot and are irrelevant." Barbosa, 297 F.R.D. at 444; see Amchem, 521 U.S. at 620, 117 S.Ct. at 2248 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.") (internal citation omitted).

The only factor in play here weighs in favor of class treatment.  Further, the filing of separate suits by potentially thousand class members "would create an unnecessary burden on judicial resources."  Barbosa, 297 F.R.D. at 445.  Under the circumstances, the court finds that the superiority requirement is satisfied.

II.     FAIRNESS, REASONABLENESS, AND ADEQUACY OF THE PROPOSED SETTLEMENT.

A.     The Settlement is the Product of Arm's-Length Negotiations.

"This circuit has long deferred to the private consensual decision of the parties." Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009).  The Ninth Circuit has "emphasized" that "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  Id. (internal quotation marks omitted).  When the settlement is "the product of an arms-length, non-collusive, negotiated resolution[,]" id., courts afford the parties the presumption that the settlement is fair and reasonable.  See Spann, 314 F.R.D. at 324; In re Netflix Privacy Litig., 2013 WL 1120801, *4 (N.D. Cal. 2013) ("Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive arms' length negotiations conducted by capable and experienced counsel.").

Here, there is no evidence of collusion or fraud leading to, or taking part in, the settlement negotiations between the parties.  Over the course of the litigation, plaintiff has amended his complaint on three separate occasions, (see Dkts. 43, 53 & 105), and the parties submitted dozens of filings.  Based on the evidence and record before the court, the court is persuaded that the parties thoroughly investigated and considered their own and the opposing parties' positions.  The parties had a sound basis for measuring the terms of the settlement against the risks of continued litigation, and there is no evidence that the settlement is "the product of fraud or overreaching by, or collusion between, the negotiating parties[.]"  Rodriguez, 563 F.3d at 965 (quoting Officers for Justice, 688 F.2d at 625).

B.    The Amount Offered In Settlement Falls Within a Range of Possible Judicial Approval and is a Fair and Reasonable Outcome for Class Members.

1.    **Recovery for Class Members.**

The settlement class members will share in a settlement fund of $1,150,000. (See Dkt. 132, Settlement Agreement at ¶ 1.34).  Plaintiff estimates that this amount equals almost the entire present-day market capitalization of IMUC. (See Dkt. 131, Supplemental Brief ISO Motion for Preliminary Approval ("Supp. Br.") at 3 n. 4).

The settlement is fair, reasonable, and adequate, particularly when viewed in light of the litigation risks in this case.  In particular, plaintiff faces the risk of failing to prove loss causation, i.e., failing to prove that defendants' fraudulent conduct was the reason IMUC's stock price became artificially inflated, and that exposure of defendants' scheme, rather than other factors, led the stock price to drop precipitously. (See Dkt. 120, Motion at 12-13).  Plaintiff further avers that his damages expert calculated that the class members suffered, at most, two million dollars of damages during the period when loss causation would be easiest to demonstrate. (See id. at 13).  The $1,150,000 settlement amount will result in compensation of approximately $0.015 per share of IMUC stock. (See Dkt. 132-2, Postcard Notice at ECF 2009).

In short, the risks of continued litigation are significant in this case and when weighed against those risks, and the costs and delays associated with continued litigation, the court is persuaded that the settlement's benefits to the class fall within the range of reasonableness.  See,

1    *e.g.*, In re Uber FCRA Litig., 2017 WL 2806698, *7 (N.D. Cal. 2017) (granting preliminary approval

2    of settlement that was worth 7.5% or less of the expected value); see also Linney v. Cellular

3    Alaska Partnership, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement

4    may only amount to a fraction of the potential recovery does not, in and of itself, mean that the

5    proposed settlement is grossly inadequate and should be disapproved.") (internal quotation marks

6    and citation omitted).

7                    2.    **Release of Claims**.

8          Beyond the value of the settlement, potential recovery at trial, and inherent risks in

9    continued litigation, courts also consider whether a class action settlement contains an overly

10   broad release of liability.  See 4 Newberg on Class Actions § 13:15, at 326 (5th ed. 2014); see,

11   e.g., Fraser v. Asus Comput. Int'l, 2012 WL 6680142, *3 (N.D. Cal. 2012) (denying preliminary

12   approval of proposed settlement that provided defendant a "nationwide blanket release" in

13   exchange for payment "only on a claims-made basis," without the establishment of a settlement

14   fund or any other benefit to the class).

15         Here, plaintiff and class members who do not exclude themselves from the settlement  will

16   release defendants from "any and all claims, demands, and causes of action of every nature and

17   description (including, but not limited to, any claims for damages, restitution, rescission, interest,

18   attorneys' fees, expert or consulting fees, and any other costs, expenses, charges, or liability

19   whatsoever), whether known or unknown or discoverable or undiscoverable, whether class,

20   derivative, or individual in nature, which now exist or have existed or have been or could have

21   been asserted in any forum by Plaintiffs or any Settlement Class Member, or any Person claiming

22   through or on behalf of any of them, against any of the Released Persons arising out of or relation

23   to the facts and allegations in the Complaint.  Expressly excluded from Released Claims are: (I)

24   the matters set forth in ¶ 6.5 of this Stipulation; and (ii) the shareholder derivative claims asserted

25   in Wiener et al. v. Fractor et al., pending in the Superior Court of the State of California, County

26   of Los Angeles." (See Dkt. 132, Settlement Agreement at ¶ 1.31).  With the understanding that,

27   under the release, the settlement class members are not giving up claims unrelated to those

28   asserted in this action, the court finds that the release adequately balances fairness to absent

class members and recovery for plaintiffs with defendants' business interest in ending this litigation. See, e.g., Fraser, 2012 WL 6680142, at *4 (recognizing defendant's "legitimate business interest in 'buying peace' and moving on to its next challenge" as well as the need to prioritize "[f]airness to absent class member[s]").

      C.    The Settlement Agreement Does Not Improperly Grant Preferential Treatment to the Class Representative.

     "Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit." Radcliffe v. Experian Info. Solutions Inc., 715 F.3d 1157, 1163 (9th Cir. 2013). The Ninth Circuit has instructed "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." Id. The court must examine whether there is a "significant disparity between the incentive awards and the payments to the rest of the class members" such that it creates a conflict of interest. See id. at 1165. "In deciding whether [an incentive] award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998).

     The Settlement Agreement provides for an incentive award payment of up to $2,500 to lead plaintiffs. (See Dkt. 132, Settlement Agreement at ¶ 1.11). Plaintiff does not condition his approval of the settlement on receipt of the incentive award. (See Dkt. 120-1, Kaye Decl. at ¶ 20 ("My support for the settlement is not contingent upon a request for compensation for out of pocket costs or my requested reimbursement of $2,500."). Under the circumstances, the court tentatively finds that an incentive payment of $2,500 is appropriate. See Dyer v. Wells Fargo Bank, N.A., 303 F.R.D. 326, 335 (N.D. Cal. 2014) (noting that in Ninth Circuit, $5,000 incentive awards are presumptively reasonable); Weeks v. Kellogg Co., 2013 WL 6531177, *35 (C.D. Cal. 2013) (collecting cases and approving a $5,000 incentive award); Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 266 (N.D. Cal. 2015) ("In this district, a $5,000 payment is presumptively reasonable."). In short, because the parties agree that the settlement will remain in force regardless of whether plaintiff receives an incentive payment, and because plaintiff seeks a

1   presumptively reasonable incentive payment of $2,500, the court is persuaded that the settlement

2   does not grant preferential treatment to plaintiff.

3          D.     Class Notice and Notification Procedures.

4          Upon settlement of a class action, "[t]he court must direct notice in a reasonable manner

5   to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).   Federal

6   Rule of Civil Procedure 23(c)(2) requires the "best notice that is practicable under the

7   circumstances, including individual notice" of particular information.   See Fed. R. Civ. P.

8   23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

9          A class action settlement notice "is satisfactory if it generally describes the terms of the

10  settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

11  forward and be heard." Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir.), cert.

12  denied, 543 U.S. 818 (2004) (internal quotation marks omitted).   "The standard for the adequacy

13  of a settlement notice in a class action under either the Due Process Clause or the Federal Rules

14  is measured by reasonableness." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 113 (2d

15  Cir.), cert. denied, 544 U.S. 1044 (2005).   Settlement notices "are sufficient if they inform the class

16  members of the nature of the pending action, the general terms of the settlement, that complete

17  and detailed information is available from the court files, and that any class member may appear

18  and be heard at the hearing." Gooch v. Life Investors Ins. Co. of America, 672 F.3d 402, 423 (6th

19  Cir. 2012) (internal quotation marks omitted); see Wershba v. Apple Comput., Inc., 91 Cal.App.4th

20  224, 252 (2001) ("As a general rule, class notice must strike a balance between thoroughness and

21  the need to avoid unduly complicating the content of the notice and confusing class members.").

22  The notice should provide sufficient information to allow class members to decide whether they

23  should accept the benefits of the settlement, opt out and pursue their own remedies, or object to

24  its terms. See In re Integra Realty Resources, Inc., 262 F.3d 1089, 1111 (10th Cir. 2001) ("The

25  standard for the settlement notice under Rule 23(e) is that it must `fairly apprise' the class

26  members of the terms of the proposed settlement and of their options.").

27         Here, class members will first receive a Postcard Notice by first class mail. (See Dkt. 120,

28  Motion at 19).  The Postcard Notice describes the nature of the action, and directs class members

17

1    to the settlement website, which contains the Website Notice.  (See Dkt. 132-2, Postcard Notice

2    at ECF 2009); 3 Newberg on Class Actions § 8:17, at 283 (5th ed. 2014) ("[A]s the internet

3    develops, it is easy, and relatively costless, to provide class members free access to a set of

4    documents in the lawsuit at settlement, not just to a synopsis describing the settlement.  A

5    settlement website may encompass content ranging from the complaint to the settlement

6    agreement and fee petition.").  The Postcard Notice also sets forth the amount class members can

7    expect to collect per share of IMUC stock, and furnishes a brief description of the settlement

8    agreement.  (See id.).

9         A longer, more detailed notice will be available online.  (See Dkt. 120, Motion at 21); (Dkt.

10   132-3, Notice of Proposed Class Action Settlement ("Long Notice")).  The Long Notice describes

11   the nature of the action, including the class claims.  (See Dkt. 132-3, Long Notice at 3-4); see Fed.

12   R. Civ. P. 23(c)(2)(B)(I) & (iii).  The class definition is conspicuously included on the Long Notice,

13   so that individuals can determine whether they are part of the class.  (See id. at 1); see also Fed.

14   R. Civ. P. 23(c)(2)(B)(ii).  The Long Notice explains the benefits of the settlement, (see id. at 4),

15   and what class members must do to obtain benefits.  (See id. at 1-2, 10).  It includes an

16   explanation laying out the class members' options under the settlement, i.e., they may submit a

17   claim form, exclude themselves, object, or do nothing.  (See id. at 1-2, 10-11); see also Fed. R.

18   Civ. P. 23(c)(2)(B)(v)-(vi).  It also explains that all class members who do not exclude themselves

19   will release claims as set forth in the release provision.  (See id. at 9); see also Fed. R. Civ. P.

20   23(c)(2)(B)(vii).  Also, if class members choose to object to the settlement, they may do so by

21   submitting written objections, and they may attend the final approval hearing.  (See id. at 1, 11-

22   12); see also Fed. R. Civ. P. 23(c)(2)(B)(iv).  Information regarding the final approval hearing is

23   likewise included.  (See id. at 12).  Finally, the Long Notice identifies A.B. Data, Ltd. as the claims

24   administrator.  (See id. at 2, 10).

25        Based on the foregoing, the court finds that there is no alternative method of distribution

26   that would be more practicable here, or any more reasonably likely to notify the class members.

27   The court further finds that the procedure for providing notice and the content of the class notice

28   constitute the best practicable notice to class members.

E.   Summary.

In short, the court's preliminary evaluation of the Settlement Agreement does not disclose grounds to doubt its fairness "such as unduly preferential treatment of class representatives or segments of the class,      inadequate compensation or harms to the classes, . . . or excessive compensation for attorneys." Manual for Complex Litigation § 21.632 (4th ed. 2004); see also Spann, 314 F.R.D. at 323.

**This Order is not intended for publication.  Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiff's Unopposed Motion for an Order Granting Preliminary Approval of Class Action Settlement **(Document No. 120)** is **granted** upon the terms and conditions set forth in this Order.

2.   The court preliminarily certifies the class, as defined in ¶ 1.35 of the Settlement Agreement (Document No. 132) for the purposes of settlement.

3.   The court preliminary appoints plaintiff Arthur Kaye as class representative for settlement purposes.

4.  The court preliminarily appoints Wolf Popper LLP and Levi & Korsinsky LLP as class counsel for settlement purposes.

5.   The court preliminarily finds that the terms of the Settlement are fair, reasonable and adequate, and comply with Rule 23(e) of the Federal Rules of Civil Procedure.

6.  The proposed manner of the notice of settlement set forth in the Settlement Agreement constitutes the best notice practicable under the circumstances and complies with the requirements of due process.

7.  The court approves the form, substance, and requirements of the Class Notice (Dkt. 132-2 & 132-3).

8.  The parties shall carry out the settlement and claims process according to the terms of the Settlement Agreement.

9.   A.B. Data, Ltd. shall complete dissemination of class notice, in accordance with the Settlement Agreement, no later than **April 5, 2019**.

10.   Any class member who wishes to: (a) object to the settlement, including the requested attorney's fees, costs and incentive award; or (b) exclude him or herself from the settlement must file his or her objection to the settlement or request for exclusion no later than **June 4, 2019**, in accordance with the Settlement Agreement, and Notice.

11.   Any class member who wishes to appear at the final approval (fairness) hearing, either on his or her own behalf or through an attorney, to object to the settlement, including the requested attorney's fees, costs and incentive awards, shall, no later than **June 4, 2019**, file with the court a Notice of Intent to Appear at Fairness Hearing.

12.   A final approval (fairness) hearing is hereby set for **August 22, 2019**, at **10:00 a.m.** in Courtroom 6D of the First Street Courthouse, to consider the fairness, reasonableness, and adequacy of the Settlement as well as the award of attorney's fees and costs to class counsel, and incentive awards to the class representatives.

13.   Plaintiff shall file a motion for an award of class representative incentive payment and attorney's fees and costs no later than **May 3, 2019**, and notice it for hearing for the date set forth in paragraph 12 above.  Any objection to the motion for an award of class representative incentive payment and attorney's fees and costs, by class members, shall be filed by the deadline set forth in paragraph 10 above.   In the event any objections to the motion for an award of class representative incentive payment and attorney's fees and costs are filed, class counsel shall, no later than **July 11, 2019**, file a reply addressing the objections.

14.   Plaintiff shall, no later than **July 18, 2019**, file and serve a motion for final approval of the settlement and a response to any objections to the settlement.  The motion shall be noticed for hearing for the date set forth in paragraph 12 above.  Defendant may file and serve a memorandum in support of final approval of the Settlement Agreement or in response to objections no later than **July 25, 2019**.

15. All proceedings in the Action, other than proceedings necessary to carry out or enforce the Settlement Agreement or this Order, are stayed pending the final fairness hearing and the court's decision whether to grant final approval of the settlement.

Dated this 4th day of February, 2019.

_____
/s/
Fernando M. Olguin
United States District Judge