```
                                              FILED
                                   CLERK, U.S. DISTRICT COURT

                                        11/19/2019

                                  CENTRAL DISTRICT OF CALIFORNIA
                                  BY:      CW           DEPUTY
```

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

ARTHUR KAYE, et al., individually and
on behalf of all others similarly situated,

        Plaintiffs,

        v.

IMMUNOCELLULAR THERAPEUTICS,
LTD., et al.,

        Defendants.

Case No. SA CV 17-3250 FMO (SKx)

**ORDER RE: FINAL APPROVAL OF CLASS
ACTION SETTLEMENT**

Having reviewed and considered Lead Plaintiffs' Motion for Final Approval of Class Action
Settlement Agreement[], (Dkt. 139, "Motion"), and Counsel's Motion for an Award of Attorneys'
Fees, and Reimbursement of Litigation Expenses, (Dkt. 140, "Fees Motion"), and the oral
argument presented during the final fairness hearing held on August 22, 2019, the court concludes
as follows.

## INTRODUCTION

On May 1, 2017, plaintiff Arthur Kaye IRA FCC as Custodian DTD 6-8-00 ("plaintiff" or
"Kaye") filed a class action complaint against defendants ImmunoCellular Therapeutics, Ltd.
("IMUC"); David Fractor; John S. Yu ("Yu"); Andrew Gengos; Manish Singh ("Singh"), Lavos, LLC;
Lidingo Holdings, LLC ("Lidingo"); Kamilla Bjorlin; Andrew Hodge ("Hodge"); Brian Nichols
("Nichols") and Vincent Cassano, (see Dkt. 1, Complaint at ¶¶ 18-28), asserting violations of the

1  Securities Exchange Act, 15 U.S.C. §§ 78(a), et seq., and associated regulations.  (See id. at ¶¶
2  142-158).

3         Plaintiffs filed the operative Third Amended Complaint on June 29, 2018, (see Dkt. 105,
4  Third Amended Complaint ("TAC")), and the case settled shortly thereafter.  (See Dkt. 139-2, Joint
5  Declaration in Support of Final Approval ("Joint Decl.") at ¶ 33).  On February 14, 2019, the court
6  granted preliminary approval of the settlement.  (See Dkt. 136, Court's Order of February 14, 2019
7  ("PAO")).  Plaintiffs now seek:  (1) final approval of the settlement; (2) attorney's fees and costs;
8  and (3) incentive awards for lead plaintiffs.  (See Dkt. 139, Motion; Dkt. 140, Fees Motion).

9                                    **BACKGROUND**

10  I.     PLAINTIFFS' CLAIMS.

11         This securities fraud class action case arises from allegations that IMUC and its corporate
12  executives tried to artificially inflate the value of the company's stock by making fraudulent claims
13  to the public.  (See Dkt. 105, TAC at ¶¶ 4-10).   IMUC is a company that develops cancer
14  treatments.  (See id. at ¶ 2).  One of IMUC's products, named ICT-107, was designed to treat
15  certain kinds of brain cancer.  (See id.).  Plaintiffs allege that IMUC's chief executive officer, Singh,
16  developed a scheme to release a series of articles falsely claiming that clinical trials for ICT-107
17  were proceeding much better than they actually were.  (See id. at ¶ 4).  According to plaintiffs,
18  Singh entered into an agreement with Lidingo, a stock promotion company, whereby Lidingo would
19  draft and publish the misleading articles on popular investor websites.  (See id. at ¶¶ 4-5).  The
20  fraudulent articles created the impression that ICT-107 was a more promising treatment than it
21  was, and made it seem more likely that IMUC would be acquired by a larger pharmaceutical
22  company.  (See id. at ¶ 5).  This caused IMUC's stock to rise from $1.43 a share in November
23  2011 to $3.02 a share in August 2012.  (Id.).

24         In August 2012, IMUC's stock began to decline, which plaintiffs attribute to Singh's
25  resignation from the company.  (See Dkt. 105, TAC at ¶ 14).  Then, in December 2013, IMUC
26  publicly divulged that the second round of clinical trials for ICT-107 had not been successful.  (See
27  id. at ¶ 17).  During that month, IMUC's stock declined to $1.10 per share.  (Id. at ¶ 18).  Plaintiffs
28  allege that defendants violated the Securities Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a) and

1  associated regulations.  (See id. at ¶ 20).

2  II.    SETTLEMENT AGREEMENT.

3        The parties define the settlement class as "all Persons who purchased or otherwise

4  acquired IMUC common stock on the open market during the Settlement Class Period, including

5  Plaintiffs." (Dkt. 132, Amended Stipulation of Settlement ("Settlement Agreement") at § 1.35).  The

6  settlement class period runs from May 1, 2012 to May 30, 2014.  (See id. at § 1.36).

7        The relief available to the class will come from a $1.15 million non-reversionary settlement

8  fund, (see Dkt. 132, Settlement Agreement at § 1.34 & 1.37), after deductions for attorney's fees

9  and costs, notice and administration costs, any class representative service awards and taxes.

10  (See id. at § 1.2).  The plan of allocation is as follows:

11            For  each  share  of  IMUC  publicly  traded  common  stock  purchased  or

12            otherwise acquired during any of the periods shown . . . in Table-1, and:

13                (a)  Sold within the same period, the Recognized Loss Amount per

14                share is zero.

15                (b)  Sold in a subsequent period, the Recognized Loss Amount per

16                share is the lesser of (i) the decline in inflation per share shown in

17                Table-1; or (ii) the purchase price per share less the sales price per

18                share.

19                (c)  Retained at the end of June 2, 2014 and sold on or before August

20                29, 2014 the claim per share shall be the lesser of: (i) the decline in

21                inflation per share shown in Table-1; (ii) the difference between the

22                purchase price and the sale price; and (iii) the difference between the

23                purchase price and the average closing price up to the date of sale as

24                set forth in Table-2[.]

25                (d)  Held as of the close of trading on August 29, 2014, or sold

26                thereafter, the claim per share shall be the lesser of (i) the decline in

27                inflation per share shown in Table-1; and (ii) the difference between

28                the purchase price and $1.04 per share.

1   (Dkt. 132-3, Notice of Proposed Class Action Settlement ("Notice") at 6-7) (footnote omitted).

2   III.    NOTICE TO THE CLASS.

3          A.B. Data, Ltd. ("AB"), the court-appointed claims administrator, implemented the notice

4   program previously approved by the court.  (See Dkt. 139-3, Declaration of Dan Deschamps

5   ("Deschamps Decl.") at ¶ 1; Dkt. 136, PAO at 17-18 (approving notice program)).  AB mailed

6   36,882 postcard notices to potential class members, (Dkt. 139-3, Deschamps Decl. at ¶¶ 3-9),

7   and published a summary notice on the press release distribution service, GlobeNewswire.

8   (See id. at ¶ 11).  AB established a case-specific toll-free telephone number that class members

9   could call and listen to answers to frequently asked questions or request a claim form and notice.

10   (See id. at ¶ 12).  Finally, AB established a website where potential class members could view

11   information about the case.  (See id. at ¶ 13).  As of June 4, 2019, AB had received one request

12   for exclusion and no objections.  (See Dkt. 139-3, Deschamps Decl. at ¶¶ 15 & 16).

13                                    **LEGAL STANDARD**

14          Federal Rule of Civil Procedure 23 provides that "[t]he claims, issues, or defenses of a

15   certified class . . . may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "The

16   primary concern of [Rule[1] 23(e)] is the protection of th[e] class members, including the named

17   plaintiffs, whose rights may not have been given due regard by the negotiating parties."  Officers

18   for Justice v. Civil Serv. Comm'n of City & Cty. of S.F., 688 F.2d 615, 624 (9th Cir. 1982).

19   Whether to approve a class action settlement is "committed to the sound discretion of the trial

20   judge[,]"  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992) (quoting Officers

21   for Justice, 688 F.2d at 625), who must examine the settlement for "overall fairness[.]"  In re

22   Hyundai and Kia Fuel Economy Litig., 926 F.3d 539, 569 (9th Cir. 2019).  The court may not

23   "delete, modify or substitute certain provisions."  Id. (internal quotation marks omitted).  "The

24   settlement must stand or fall in its entirety."  Officers for Justice, 688 F.2d at 630.

25          In order to approve a settlement in a class action, the court must conduct a two-step

26   inquiry.  First, the court must determine whether the notice requirements of Rule 23(c)(2)(B) have

27   _____

28          [1]  All "Rule" references are to the Federal Rules of Civil Procedure.

                                              4

been satisfied.  Second, it must conduct a hearing to determine whether the settlement agreement is "fair, reasonable, and adequate."  See Fed. R. Civ. P. 23(e)(2); Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003) (discussing the Rule 23(e)(2) standard).

In determining whether a settlement is fair, adequate, and reasonable, the court must weigh some or all of the following factors:  "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011) (quoting Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004)).

However, when "a settlement agreement is negotiated prior to formal class certification, consideration of these eight . . . factors alone is not enough to survive appellate review." Bluetooth, 654 F.3d at 946 (emphasis in original).  This is because, "[p]rior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement." Id.; see Koby v. ARS Nat'l Servs., Inc., 846 F.3d 1071, 1079 (9th Cir. 2017) ("When, as here, a class settlement is negotiated prior to formal class certification, there is an increased risk that the named plaintiffs and class counsel will breach the fiduciary obligations they owe to the absent class members.").  District courts, therefore, must determine whether "the settlement is not the product of collusion among the negotiating parties." Bluetooth, 654 F.3d at 947 (internal quotation and alteration marks omitted).  In making that determination, courts should look for signs of collusion, including "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded[;]" "(2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds[;]" and "(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]" Id. (internal quotation marks and citations omitted).

**DISCUSSION**

I.   FINAL APPROVAL OF CLASS SETTLEMENT.

    A.   <u>Class Certification</u>.

    In its order granting preliminary approval, the court certified the class pursuant to Rule 23(b)(3).  (<u>See</u> Dkt. 136, PAO at 4, 6-14).  Because circumstances have not changed, the court hereby affirms its order certifying the class for settlement purposes under Rule 23(e).  <u>See</u>, <u>e.g.</u>, <u>Gonzalez v. BMC West, LLC</u>, 2018 WL 6318832, *5 (C.D. Cal. 2018) ("In its Preliminary Approval Minute Order, the Court certified the Settlement Class in this matter under Rules 23(a) and 23(b)(3).  Accordingly, the Court need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b).") (internal quotation marks omitted).

    B.   <u>Rule 23(c) Notice Requirements</u>.

    Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2) and, upon settlement of a class action, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  Rule 23(c)(2) requires the "best notice that is practicable under the circumstances, including individual notice" of particular information.  <u>See</u> Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

    After undertaking the required examination, the court approved the form of the proposed class notice.  (<u>See</u> Dkt. 136, PAO at 17-18).  As discussed above, the notice program was implemented by AB.  <u>See supra</u> Background at § III.  Accordingly, based on its prior findings and the record before it, the court finds that the class notice and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, the class members' right to exclude themselves from the action, and their right to object to the proposed settlement.  (Dkt. 136, PAO at 17-18).

/ / /

/ / /

1        C.     <u>Whether the Class Settlement is Fair, Adequate and Reasonable</u>.

2            1.     **The Strength of Plaintiffs' Case, and the Risk, Expense, Complexity,**

3                   **and Duration of Further Litigation**.

4        In evaluating the strength of the case, the court should assess "objectively the strengths

5 and weaknesses inherent in the litigation and the impact of those considerations on the parties'

6 decisions to reach [a settlement]." <u>Adoma v. University of Pheonix, Inc.</u>, 913 F.Supp.2d 964, 975

7 (E.D. Cal. 2012) (internal quotation marks omitted). "In assessing the risk, expense, complexity,

8 and likely duration of further litigation, the court evaluates the time and cost required." <u>Id.</u> at 976.

9        Here, in granting preliminary approval of the settlement, the court recognized the "risks of

10 continued litigation [were] significant" and that coupled with "the costs and delay associated with

11 continued litigation," the "benefits to the class" were within the range of reasonableness. (<u>See</u> Dkt.

12 136, PAO at 14). The settlement here affords class members monetary benefits in the face of a

13 vigorous defense and substantial delay. (<u>See</u> Dkt. 139-1, Memorandum of Points and Authorities

14 in Support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement, Class

15 Certification and Approval of Plan of Allocation ("Memo") at 7-10). Under the circumstances, the

16 court finds it significant that the class members will receive "immediate recovery by way of the

17 compromise to the mere possibility of relief in the future, after protracted and expensive litigation."

18 <u>Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.</u>, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal

19 quotation marks omitted). In short, this factor supports a finding that the settlement is fair,

20 adequate, and reasonable.

21            2.     **The Risk of Maintaining Class Action Status Through Trial**.

22        In its order granting preliminary approval, the court certified the class pursuant to Rule

23 23(b)(3). (<u>See</u> Dkt. 136, PAO at 3-5, 6-14). In deciding whether to certify the class for settlement

24 purposes, the court determined that the requirements of Rule 23 for settlement purposes have

25 been met. (<u>See</u> <u>id.</u>); <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 620, 117 S.Ct. 2231, 2248

26 (1997) ("Confronted with a request for settlement-only class certification, a district court need not

27 inquire whether the case, if tried, would present intractable management problems[.]"). Nothing

28 has been put forth to challenge or otherwise undermine the court's previous order certifying the

class for settlement purposes under Rule 23(e). See In re Apollo Grp. Inc. Sec. Litig., 2012 WL 1378677, *4 (D. Ariz. 2012) ("The Court has previously certified, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and hereby reconfirms its order certifying a class."). Accordingly, this factor weighs in favor of approving the settlement.

### 3.   **The Amount Offered in Settlement**.

"[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotation marks omitted). In granting preliminary approval of the settlement, the court concluded that the settlement benefits were fair, adequate, and reasonable in light of the litigation risks in the case. (See Dkt. 136, PAO at 13-16). Moreover, as plaintiffs note, the $1.15 million settlement amount exceeds IMUC's current market capitalization of $1.01 million. (See Dkt. 139-1, Memo at 9). Accordingly, this factor also weighs in favor of final approval.

### 4.   **The Extent of Discovery Completed and the Stage of Proceedings**.

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." Nat'l Rural Telecomms., 221 F.R.D. at 528. "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." Id. at 527 (internal quotation marks omitted). However, "in the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (alterations and internal quotation marks omitted); see id. at 459-60 (district court "did not err in approving the Settlement" even though "extensive formal discovery had not been completed"). The court previously examined these factors at length, noting that the parties had "thoroughly investigated and considered their own and the opposing parties' positions[,]" which enabled them to develop "a sound basis for measuring the terms of the settlement against the risks of continued litigation[.]" (Dkt. 136, PAO at 14). In other words, the parties entered the settlement discussions with a substantial understanding of the factual and legal issues from which they could advocate for their respective positions. See Nat'l Rural Telecomms.,

221 F.R.D. at 527-28 (noting that parties' examination of the factual and legal bases of the disputed claims through completion of discovery "strongly militates in favor of the Court's approval of the settlement"); Barbosa v. Cargill Meat Sols. Corp., 297 F.R.D. 431, 447 (E.D. Cal. 2013) ("What is required is that sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently.") (internal quotation marks omitted).  This factor also supports approval of the settlement.

5.    **The Experience and Views of Counsel**.

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.  This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation."  Nat'l Rural Telecomms., 221 F.R.D. at 528 (internal quotation marks and citation omitted).  Here class counsel have concluded that the settlement is "fair, reasonable and adequate, and should be approved." (Dkt. 139-2, Joint Decl. at ¶ 11; see also Dkt. 139-1, Memo at 5-6).  Also, the court has previously noted that class counsel are adequate.  (See Dkt. 136, PAO at 10).  Thus, this factor also supports approval of the settlement.

6.    **The Presence of a Governmental Participant**.

There is no government participant in this matter.  Accordingly, this factor is inapplicable. See Wren v. RGIS Inventory Specialists, 2011 WL 1230826, *10, supplemented by 2011 WL 1838562 (N.D. Cal. 2011) (noting that lack of government entity involved in case rendered this factor inapplicable to the analysis).

7.    **The Reaction of Class Members to the Proposed Settlement**.

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  Nat'l Rural Telecomms, 221 F.R.D. at 529.  Here, the reaction of the class has been very positive.  Significantly, there was only one request for exclusion and no objections.  (See Dkt. 139-2, Joint Decl. at ¶ 83; see, generally, Dkt.).  The lack of objections and the single request for exclusion support approval of the settlement.  See, e.g.,

1  *Franco v. Ruiz Food Prods., Inc.*, 2012 WL 5941801, *14 (E.D. Cal. 2012) (finding this factor
2  weighed in favor of approval when only two out of 2,055 class members – less than one percent
3  – opted out, and there were no objections to the settlement); *Gong-Chun v. Aetna Inc.*, 2012 WL
4  2872788, *16 (E.D. Cal. 2012) (settlement approved when less than two percent of the class
5  members opted out and no objections were received); *Barcia v. Contain-A-Way, Inc.*, 2009 WL
6  587844, *4 (S.D. Cal. 2009) (finding this factor weighed in favor of approval of settlement when
7  there were only 56 opt outs and no objections out of the 2,385 class members).

8  II.   ATTORNEY'S FEES, COSTS AND SERVICE AWARDS.

9      The Settlement Agreement provides that plaintiffs' counsel may submit an application "for
10  an award of attorneys' fees not to exceed 25% of the Settlement amount, plus up to $80,000 in
11  expenses incurred in connection with prosecuting the Litigation[.]" (Dkt. 132, Settlement
12  Agreement at § 8.1).  Class counsel now seek such an award, which amounts to $287,500 in
13  attorney's fees and $67,200.92 in costs.  (*See* Dkt. 140, Fees Motion; Dkt. 140-1, Counsel's
14  Memorandum in Support of Fees Motion ("Fees Memo") at 1).

15     A.   Attorney's Fee Award.

16     Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable
17  attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).
18  In general, courts have discretion to choose among two different methods for calculating a
19  reasonable attorney's fee award.  *See* Bluetooth, 654 F.3d at 941.  Under the "percentage-of-the-
20  fund" or "percentage-of-recovery" method, the "court simply awards the attorneys a percentage
21  of the fund sufficient to provide class counsel with a reasonable fee." *Hanlon v. Chrysler Corp.*,
22  150 F.3d 1011, 1029 (9th Cir. 1998).  This method is typically used when a common fund is
23  created.  *See* Bluetooth, 654 F.3d at 942.

24     Alternatively, under the lodestar method, the court multiplies the number of reasonable
25  hours expended by a reasonable hourly rate.  *See* Hanlon, 150 F.3d at 1029.  Once the lodestar
26  has been determined, the "figure may be adjusted upward or downward to account for several
27  factors including the quality of the representation, the benefit obtained for the class, the complexity
28  and novelty of the issues presented, and the risk of nonpayment." *Id.*  The lodestar method is

typically utilized when the relief obtained is "not easily monetized," such as when injunctive relief is part of the settlement. See Bluetooth, 654 F.3d at 941. The court's discretion in choosing between these two methods "must be exercised so as to achieve a reasonable result." Id. at 942; Glass v. UBS Fin. Servs., Inc., 2007 WL 221862, *14 (N.D. Cal. 2007), aff'd, 331 F.Appx. 452 (9th Cir. 2009) ("As always, when determining attorneys' fees, the district court [is] guided by the fundamental principle that fee awards out of common funds be reasonable under the circumstances.") (internal quotation marks and emphasis omitted).

Under the circumstances here, the court is persuaded that the percentage-of-fund method will achieve a reasonable result in this case. The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorneys fees." Hanlon, 150 F.3d at 1029. Courts consider "all of the circumstances of the case[,]" including the following factors when determining the percentage to be applied in a given case: (1) the results achieved for the class; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee; and (5) awards made in similar cases. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002); Viceral v. Mistras Group, Inc., 2017 WL 661352, *3 (N.D. Cal. 2017) (utilizing similar factors); In re Online DCD-Rental Antitrust Litig., 779 F.3d 934, 955 (9th Cir. 2015) (explaining that "there are no doubt many factors that a court could apply in assessing an attorneys' fees award" and that "Vizcaino does not purport to establish an exhaustive list"). The actual percentage will vary depending on the facts of each case, but in "most common fund cases, the award exceeds that benchmark." Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 491 (E.D. Cal. 2010) (internal quotation marks omitted).

### 1. The Results Obtained for the Class.

"The result achieved is a significant factor to be considered in making a fee award." In re Heritage Bond Litig., 2005 WL 1594403, *19 (C.D. Cal. 2005); see Hensley v. Eckerhart, 461 U.S. 424, 436, 103 S.Ct. 1933, 1941 (1983) ("the most critical factor is the degree of success obtained"). Here, the $1.15 million settlement amount is greater than IMUC's current market capitalization. (See Dkt. 139-2, Joint Decl. at ¶ 63). Also, the settlement amount is significant given that plaintiffs' damages consultant estimated a maximum possible recovery of about $2

1  million.  (See Dkt. 139-1, Memo at 11-12).  Thus, this factor weighs in favor of class counsel's fee
2  request.

3            **2.**     **The Risk of Litigation.**

4        "The risk that further litigation might result in Plaintiffs not recovering at all, particularly a
5  case involving complicated legal issues, is a significant factor in the award of fees."  In Re
6  Omnivision Technologies, Inc., 559 F.Supp.2d 1036, 1046-47 (N.D. Cal. 2008).  As discussed in
7  the court's prior order, the risks of continued litigation were significant.  (See Dkt. 136, PAO at 14-
8  15); Vizcaino, 290 F.3d at 1048 (risk of dismissal or loss on class certification is relevant to
9  evaluation of a requested fee).

10            **3.**     **The Skill Required and Quality of Work.**

11        The "prosecution and management of a complex national class action requires unique legal
12  skills and abilities."  Omnivision, 559 F.Supp.2d at 1047 (internal quotation marks omitted).  Here,
13  class counsel are experienced class action litigators who have been appointed class counsel in
14  other class actions.  (See Dkt. 136, PAO at 9-10).  This factor weighs in favor of granting the
15  requested fee.

16            **4.**     **The Contingent Nature of the Fee.**

17        "The importance of assuring adequate representation for plaintiffs who could not otherwise
18  afford competent attorneys justifies providing those attorneys who do accept matters on a
19  contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee."  Knight v.
20  Red Door Salons, Inc., 2009 WL 248367, *6 (N.D. Cal. 2009).  Here, class counsel took this case
21  on a contingent basis, foregoing other work and entailing significant out-of-pocket expenses,
22  incurring a lodestar of more than $1 million.  (See Dkt. 139-2, Joint Decl. at ¶¶ 9, 102-04).  In
23  short, this factor also supports the requested fees.

24            **5.**     **Awards Made in Similar Cases.**

25        The requested fee is commensurate with the Ninth Circuit's 25% benchmark,  see Hanlon,
26  150 F.3d at 1029, and based on the results achieved, the court finds that the requested amount
27  is reasonable.  See In re High-Tech Emp. Antitrust Litig., 2015 WL 5158730, *6 (N.D. Cal. 2015)
28  (noting that "it is well established that 25% of a common fund is a presumptively reasonable

amount of attorney's fees") (internal quotation marks omitted); <u>Nitsch v. DreamWorks Animation SKG Inc.</u>, 2017 WL 2423161, *7 (N.D. Cal. 2017) ("Where the percentage-of-recovery method is employed, it is well established that 25% of a common fund is a presumptively reasonable amount of attorney's fees.").

Consideration of the foregoing factors supports class counsel's request for attorney's fees in the amount of 25% of the settlement fund, or $287,500. The court, therefore, is satisfied that a lodestar "cross-check" is not required. <u>See</u> <u>Craft v. City of San Bernardino</u>, 624 F.Supp.2d 1113, 1122 (C.D. Cal. 2008) ("A lodestar cross-check is not required in this circuit, and in some cases is not a useful reference point.").

B.   <u>Costs</u>.

Class counsel seek $62,200.92 in litigation expenses for themselves, and $5,000 for costs incurred by the two lead plaintiffs. (<u>See</u> Dkt. 140-1, Fees Memo at 19-21). The court finds that the costs incurred by class counsel over the course of this litigation are reasonable, and therefore awards a total of $67,200.92 in costs. (<u>See</u> Dkt. 139-2, Joint Decl. at ¶¶ 115, 119).

C.   <u>Class Representative Service Awards</u>.

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." <u>Staton</u>, 327 F.3d at 977; <u>see</u> <u>Wren</u>, 2011 WL 1230826, at *31 ("It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards."). Here, plaintiffs request that the court grant a service award in the amount of $2,500 to each class representative. (<u>See</u> Dkt. 140-1, Fees Memo at 20-21).[2]

In its order granting preliminary approval of the settlement, the court undertook a thorough examination of the fairness and adequacy of the service awards at issue, applying the careful scrutiny required in this Circuit. (<u>See</u> Dkt. 136, PAO at 16-17); <u>see also</u> <u>Radcliffe v. Experian Info.</u>

---

[2] Although plaintiffs refer to the $2,500 incentive awards for each lead plaintiff as a request for "costs," (<u>see</u> Dkt. 140-1, Fees Motion Memorandum at 20-21), they clarified at the August 22 hearing that this amount was for an incentive award rather than lead plaintiffs' out-of-pocket expenditures.

1   Sols. Inc., 715 F.3d 1157, 1163 (9th Cir. 2013) (instructing "district courts to scrutinize carefully

2   the awards so that they do not undermine the adequacy of the class representatives").  Based on

3   its review of the record, the court determined that an award of $2,500 for each class

4   representative was presumptively reasonable and did not create a conflict of interest between

5   named plaintiffs and absent class members.  (See Dkt. 136, PAO at 16-17).  The court therefore

6   concludes that the requested service payments are fair and reasonable, and is hereby approved.

7                                                     **CONCLUSION**

8           Based on the foregoing, IT IS ORDERED THAT:

9           1.  Lead Plaintiffs' Motion for Final Approval of Class Action Settlement Agreement[]

10   **(Document No. 139)** is **granted** as set forth herein.

11          2.  The court hereby **grants** final approval to the parties' Settlement Agreement (Document

12   No. 132).  The court finds that the Settlement Agreement is fair, adequate and reasonable,

13   appears to be the product of arm's-length and informed negotiations, and treats all members of

14   the class fairly.  The parties shall perform their obligations pursuant to the terms of the Settlement

15   Agreement and this Order.

16          3.  Counsel's Motion for an Award of Attorney's Fees, and Reimbursement of Litigation

17   Expenses **(Document No. 140)** is **granted** as set forth herein.

18          4.   The settlement class is certified under Federal Rule of Civil Procedure 23(c): "All

19   Persons who purchased or otherwise acquired IMUC common stock on the open market during

20   the Settlement Class Period (May 1, 2012, to May 30, 2014), including Plaintiffs."

21          5.  The form, manner, and content of the Class Notice meet the requirements of Federal

22   Rules of Civil Procedure 23(c)(2).

23          6.  Plaintiffs Arthur Kaye and Hayden Leason shall each be paid a service payment of

24   $2,500 in accordance with the terms of the Settlement Agreement.

25          7.  Class counsel shall be paid $287,500 in attorney's fees, and $62,200.92 in costs in

26   accordance with the terms of the Settlement Agreement.

27          8.  The Claims Administrator, A.B. Data Ltd., shall be paid for its fees and expenses in

28   accordance with the terms of the Settlement Agreement.

9.  All class members who did not validly and timely request exclusion from the settlement have released their claims, as set forth in the Settlement Agreement, against any of the released parties (as defined in the Settlement Agreement).

10.  Except as to any class members who have validly and timely requested exclusion, this action is **dismissed with prejudice**, with all parties to bear their own fees and costs except as set forth herein and in the prior orders of the court.

11.  Without affecting the finality of this Order in any way, the court hereby retains jurisdiction over the parties, including class members, for the purpose of construing, enforcing, and administering the Order and Judgment, as well as the Settlement Agreement itself.

12.  Judgment shall be entered accordingly.

Dated this 19th day of November, 2019.

/s/
Fernando M. Olguin
United States District Judge